Paul Jones was convicted on November 3, 1995, of three counts of sodomy in the first degree, three counts of sexual abuse in the first degree, and three counts of sexual abuse, second degree. The offenses underlying the convictions occurred over a period of several years and involved the appellant's sexual abuse of his minor niece by marriage, M.C. The appellant was sentenced to 10 years in the penitentiary on each count of sodomy in the first degree, one year and one day in the penitentiary on each count of sexual abuse in the first degree, and one year in the county jail on each count of sexual abuse in the second degree. All the sentences were to be served concurrently.
The appellant raises three issues on appeal.
 I.
The appellant argues that the trial court erred in postponing the service of prospective grand jury members to a date after which they were originally summoned to appear.
The venire from which the grand jury that indicted him was selected consisted of 25 veniremembers who were originally scheduled to serve the previous week, were excused that week, and were told to report for duty the following week.
William E. Sayers, Circuit Clerk of Elmore County during this two-week period, testified at a motion hearing on September 19, 1995, that all the cases originally scheduled for the civil docket during the week of January 3, 1995 had settled before trial. Judge Bush informed the jury at that time that it was excused for the week. Some jurors informed Judge Bush that they would like to serve on a jury at another time. (R. 61-64.) Mr. Sayers further testified, that at Judge Bush's direction, he recorded the names of those jurors who had indicated that they would like to serve and added them to the list of jurors summoned for the week of January 9. (R. 78-86.)
Other testimony revealed that the clerk did nothing to solicit the jurors' participation in the later venire. (R. 99). Sayers also revealed that he had no knowledge of any case that was scheduled to be presented to the January 9, 1995, grand jury and that he knew of no way that the jurors added to the January 9 venire could have obtained that information. (R. 98-99.) Additionally, Sayers testified that the veniremembers whose service was carried over had no way of knowing whether their service would be on a criminal petit jury, a civil petit jury, or a grand jury. (R. 101.)
The appellant maintains that this procedure was illegal and resulted in the arbitrary selection of the grand jury that indicted him. He also alleges that the judge involved himself in the selection process. We find his argument without merit.
Absent proof to the contrary, or an offer of proof, there is a presumption that no legal fraud exists in the jury selection procedure. Nixon v. State, 291 Ala. 657, 659,286 So.2d 315, 317 (1973).
The appellant's contention that the inclusion of these jurors on the grand jury was illegal is not supported by Alabama law. Section 12-16-74, Ala. Code 1975 provides, in part that "[t]he court may in any case, including capital cases, excuse orpostpone the service of any prospective juror outside the presence of the parties and their counsel in accordance with the provisions contained in section 12-16-63." In Brewer v.State, 440 So.2d 1155 (Ala.Cr.App. 1983), this Court held that there was no error when a potential grand juror who was summoned to serve during one jury term had his service postponed until the selection of a later grand jury.
We find that there was no error in the postponement of the veniremembers' service; even if the postponement was error, it was harmless. See Ala.R.App.P., Rule 45. The appellant has not demonstrated how he was prejudiced by the postponement. The appellant made no objection to the manner in which the January 3, list of prospective jurors was selected nor did he voice any particular concern as to its composition. The record indicates that on January 3, everyone who expressed a desire to serve on a venire was added to the list of jurors the following *Page 252 
week. (R. 79.) There was no arbitrary selection process. The judge had no input in the selection of the grand jury that indicted the appellant. Selection was by means of a totally random process. (R. 94-95.) The veniremembers who wanted their service postponed had no idea what type of jury, if any, they would be serving on the following week.
Additionally, the appellant makes only a general argument that his indictment should be quashed because the grand jury was "illegally constituted." There is no allegation that his substantial rights were affected in any way because of the manner in which the grand jury was selected; therefore, any error or irregularity which may have occurred was harmless to the appellant. Even if error has occurred, where the appellant's substantial rights have not been injured, we will not reverse the judgment of the trial court.
 II.
The appellant argues that the search warrant issued by the trial court authorizing the examination and photographing of his genitalia was neither authorized by Alabama law nor supported by probable cause. We find the appellant's argument without merit.
The appellant argues that, by definition, a search warrant may be issued only for the recovery of personal property. Section 15-5-1, Ala. Code 1975, defines the term "search warrant,";
 "A `search warrant' is an order in writing in the name of the state signed by a judge, or by a magistrate authorized by law to issue search warrants, and directed to the sheriff or to any other constable of the county, commanding him to search for personal property and bring it before the court issuing the warrant."
The issue whether a search warrant authorizing the search of someone's body is permitted by Alabama law appears to be one of first impression. The vast majority of caselaw regarding the admissibility of evidence gathered from the human body addresses warrantless search procedures instituted pursuant to an arrest. However, on at least two occasions, courts in other states have upheld search warrants similar to the one the appellant challenges here. See, e.g., Rodriques v. Furtado,410 Mass. 878, 575 N.E.2d 1124 (1991) (dicta indicating that a warrant authorizing the search of a body cavity would be valid if issued on the authority of a judge and based on a strong showing of particularized need and supported by a high degree of probable cause); Birchfield v. State, 412 So.2d 1181
(Miss. 1982) (holding that municipal judge had authority to issue a search warrant authorizing the taking of a blood sample from a rape suspect for identification upon sufficient probable cause). The instant case is unique in that the evidence was not needed to identify the offender or verify the existence of certain substances in his system, but to corroborate a graphic account of sexual abuse given by a victim familiar with the appellant.
Both § 15-5-2, Ala. Code 1975, and Rule 3.8, Ala.R.Crim.P., address the issuance of search warrants. The requirements set out by the rule and the statute are virtually identical; however, unless otherwise provided by law, Rule 3.8 supersedes § 15-5-2. Ex parte Oswalt, 686 So.2d 368, 373
(Ala. 1996).
Section 15-5-2 Ala. Code 1975 provides:
 "A search warrant may be issued on any one of the following grounds:
 "(1) Where the property was stolen or embezzled.
 "(2) Where it was used as the means of committing a felony; or
 "(3) Where it is in the possession of any person with the intent to use it as a means of committing a public offense or in the possession of another to whom he may have delivered it for the purpose of concealing it or preventing its discovery."
Rule 3.8, Ala.R.Crim.P. provides:
 "A search warrant authorized by this rule may be issued if there is probable cause to believe the property sought:
 "(1) Was unlawfully obtained;
 "(2) Was used as the means of committing or attempting to commit any *Page 253 
offense under the laws of the state of Alabama or any political division thereof;
 "(3) Is in the possession of any person with intent to use it as a means of committing a criminal offense, or is in the possession of another to whom he may have delivered it for the purpose of concealing it or preventing its discovery, or;
 "(4) Constitutes evidence of a criminal offense under the laws of Alabama or any political subdivision thereof."
(Emphasis added.)
We disagree with the appellant's assertion that personal property is the only type of evidence that may be obtained by a validly issued search warrant. There is ample authority, both in Federal and state caselaw, to suggest that a search warrant may be issued to recover evidence which cannot be classified as personal property, but that can establish a link between the subject of the search and the criminal activity.
A line of Federal cases acknowledges that the human body can harbor evidence that a crime has been committed. Generally, search and seizure of evidence within an accused's body is authorized by law when there is sufficient probable cause that the search will produce evidence linking the subject to a crime, when the search is a reasonable one, and when the search is performed in a reasonable manner. Schmerber v.California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908
(1966). Schmerber involved a warrantless blood alcohol test performed at the direction of police officers at a hospital where the defendant, who was under arrest, was receiving treatment for injuries suffered in an accident involving the automobile he had apparently been driving while intoxicated. The Schmerber court concluded that the blood alcohol test was reasonable under the circumstances because the officers had a clear indication that evidence of alcohol would be found in the defendant's system, the blood test was a highly effective means of determining whether the defendant was under the influence of alcohol, and because the test was performed by a doctor in a hospital environment according to accepted medical practices.
The United States Supreme Court later altered the test permitting intrusive searches to provide more protection to the person searched in Winston v. Lee, 470 U.S. 753,105 S.Ct. 1611, 84 L.Ed.2d 662 (1985). In Winston, the Court held that the surgical removal of a bullet from the defendant's body would be an unreasonable search and seizure because the surgery was complicated and might endanger the defendant. We quote:
 "The reasonableness of surgical intrusions beneath the skin depends on a case-by-case approach, in which the individual's interests in privacy and security are weighed against society's interests in conducting the procedure to obtain evidence for fairly determining guilt or innocence."
Winston, 470 U.S. at 760, 105 S.Ct. at 1616,84 L.Ed.2d at 669. See also United States v. Crowder,543 F.2d 312 (D.C. Cir. 1976), cert. denied, 429 U.S. 1062,97 S.Ct. 788, 50 L.Ed.2d 779 (1977).
The Schmerber and Winston cases, and other cases involving an actual intrusion into the body, involve fact situations far removed from those in the present case. Here the search warrant was to obtain photographs to corroborate a young girl's statement that the appellant had sexually molested her. However, the above cases are helpful to our determination in this case in that the searches contemplated in those cases are far more intrusive, at times involving the possibility of physical harm to the individual searched, than photographing the appellant's genitalia. In the cases involving surgery, the Court determined that an adversarial hearing was required before surgery to give the defendant the opportunity to state his objection to the surgery and to cross-examine medical witnesses regarding the danger involved in the procedure.
The distinguishing factor in the instant case is that the search would not have placed the appellant in danger. The photographs authorized by the search warrant do not rise to the level of intrusion contemplated in the above-cited cases requiring an adversarial hearing to balance the necessity of the search with the possible danger to the defendant. M.C., the victim in this case, told *Page 254 
investigators that there was a distinguishing mole on the underside of the appellant's scrotum, which she had observed during sexual abuse. We find that the presence or absence of such a mole was vital in determining the appellant's guilt or innocence. While the appellant attempts to suggest innocent ways M.C. could have learned of the mole without actually seeing it, the detailed description of the characteristics and the exact location of the mole that M.C. provided in her interview with Investigator Jim Schassler strongly suggest that M.C.'s knowledge was firsthand. The affidavit in support of the search warrant by Investigator Schassler reads in part:
 "On March 8, 1995, I received a report from [M.C.] concerning an ongoing series of sexual encounters between her and William Paul Jones. [M.C.] was 8 years old at the beginning of the alleged sexual encounters and currently is 16 years old. According to [M.C] she has had sexual encounters with Mr. Jones beginning in 1986, when she was 8 years old, and continued until approximately age 14, in 1993. My investigation has established that Mr. Jones was approximately 37 years old in 1986 and is currently 46 years old. Based upon my interview with [M.C.], Mr. Jones engaged in oral sex and fondling of this child until she was approximately 10 years old and thereafter engaged in sexual intercourse and sodomy with the child until 1993. During my interview with [M.C.] she described in specific detail a mole on the testicles of William Paul Jones, almost skin colored and located close to the bottom of the scrotum.
 "Based on my experience and training, I have a clear indication that this child has a knowledge of
intimate details of sexual parts of Mr. Jones's private areas which would only be known to her if such abuse had been going on as she stated.
 "Based on the foregoing facts and information. I have probable cause to believe and do believe that evidence relating to the crimes of rape and sodomy will be located on the person of William Paul Jones and I have therefore made this affidavit in order that a search warrant may issue to search said person and obtain photographs of a mole or lack of a mole, or mole type growth in the area of William Paul Jones scrotum"
(C.R.337-38.)
We agree that the probability that M.C. obtained this degree of familiarity with the appellant's genitalia through innocent means is extremely low. Investigator Schassler properly executed a sworn affidavit clearly stating the grounds upon which the warrant was to be issued. Rule 3.9(a), Ala.R.Crim.P. The search warrant was lawfully issued to obtain evidence relating to a crime that had been committed. The appellant's contention that a search warrant was not the proper means of procuring the photographic evidence is without merit.
The appellant's argument that the judge lacked the probable cause necessary to issue the search warrant is without merit. A finding of probable cause may be based completely on hearsay evidence, "provided that there is a substantial basis for believing the evidence under the totality of the circumstances." Rule 3.9(b), Ala.R.Crim.P. "An issuing judge's determination that sufficient probable cause existed to support the warrant is `entitled to great deference and is conclusive in the absence of arbitrariness.'" Wamble v. State, 593 So.2d 109, 110
(Ala.Cr.App. 1991), citing United States v. Pike,523 F.2d 734 (5th Cir. 1975), reh'g denied, 525 F.2d 1407, cert. denied, 426 U.S. 906, 96 S.Ct. 2226, 48 L.Ed.2d 830 (1976). We must determine whether the issuing judge had a "substantial basis" for concluding that probable cause existed. Wamble v.State; Illinois v. Gates, 462 U.S. 213, 238,103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983). We find that the facts detailed in Investigator Schassler's affidavit were sufficient to form a substantial basis for the trial judge's determination that probable cause existed to support the issuance of the search warrant.
 III.
The appellant argues that the verdicts are unsupported by the evidence. He alleges that the State's case was based upon the testimony of the victim and that the victim's allegations consist of inconsistencies and misstatements. *Page 255 
 "In Determining whether there is sufficient evidence to support the verdict of the jury and the judgment of the trial court, we must accept as true the evidence introduced by the state, accord the State all legitimate inferences therefrom, and view the evidence in a light most favorable to the prosecution."
Rowe v. State, 662 So.2d 1227, 1229 (Ala.Cr.App. 1995) (quoting Underwood v. State, 646 So.2d 692, 695
(Ala.Cr.App. 1993)); see also McMillian v. State,594 So.2d 1253 (Ala.Cr.App. 1991); Faircloth v. State,471 So.2d 485, 486 (Ala.Cr.App. 1984), aff'd. 471 So.2d 493 (Ala. 1985).
Additionally, the victim's testimony alone is sufficient to establish a prima facie case of either rape or sexual abuse.Jones v. State, 580 So.2d 97, 103 (Ala.Cr.App. 1991).
 "`Any inconsistencies and conflicts in the evidence were for the jury to resolve. This court is not a finder of fact and will not second-guess juries in their conclusions as to the facts of a case. "`[V]erdicts rendered [on conflicting evidence] are conclusive upon appeal.' Johnson v. State, 555 So.2d 818, 820 (Ala.Cr.App.l989[)]." Dailey v. State, 604 So.2d 436 (Ala.Cr.App. 1992). See also Woods v. State, 592 So.2d 631 (Ala.Cr.App.), writ quashed, 592 So.2d 636 (Ala. 1991).'"
Rowe, 662 So.2d at 1230, quoting O'Barr v.State, 639 So.2d 533, 536 (Ala.Cr.App. 1993). Any issues regarding the weight and credibility of the evidence are not reviewable on appeal once the state has made a prima facie case.Gwin v. State, 668 So.2d 899, 901 (Ala.Cr.App. 1995).
The appellant was convicted of sodomy in the first degree, sexual abuse in the first degree; and sexual abuse in the second degree. Ala. Code 1975, § 13A-6-63(a)(3), provides that a person is guilty of sodomy in the first degree if the person is 16 years old or older and engages in deviate sexual intercourse with a person who is less than 12 years old. Deviate sexual intercourse is defined as "[a]ny act of sexual gratification between persons not married to each other involving the sex organs of one person and the mouth or anus of another." Ala. Code 1975, § 13A-6-60(2). Section 13A-6-66(a)(3) provides that a person is guilty of sexual abuse in the first degree if he is 16 years old or older and subjects another person who is less than 12 years old to sexual contact. Sexual contact is defined as "[a]ny touching of the sexual or other intimate parts of a person not married to the actor, done for the purpose of gratifying the sexual desire of either party." § 13A-6-60(3), Ala. Code 1975. Section 13A-6-67(a)(2) provides that a person is guilty of sexual abuse in the second degree if he is 19 years old or older and he subjects another person who is less than 16 years old, but more than 12 years old, to sexual contact.
The evidence presented at trial by the state is perhaps best summarized in the trial court's sentencing order. We quote:
 "The evidence indicated that Mr. Jones repeatedly took advantage of [M.C.] while she was staying overnight in his home and at other times and places when they were together as a family. The testimony was explicit with respect to the oral sex which involved Mr. Jones coaxing or requiring [M.C] to place his penis into her mouth often to the point of and including ejaculation into her mouth. [M.C] testified as she became older the sexual conduct advanced to sexual intercourse in conjunction with marijuana use. The testimony included descriptions of videotaping of sex acts and the photographing of [M.C.] in the nude. The testimony regarding the existence of the photographs and an audio-tape recording of a telephone conversation with [M.C.] corroborating the defendant's possession of such photographs, was particularly revealing of the guilt of the Defendant.
 "Additionally, [M.C] accurately described the existence of a mole located on the scrotum of the defendant which was photographed pursuant to a search warrant and admitted into evidence. This evidence established that the victim had knowledge of the defendant's genital characteristics."
(C.R.240-241). (Footnote omitted.)
We find that the evidence introduced by the state was sufficient to establish a prima facie case with regard to each crime as to *Page 256 
which the appellant was found guilty by the jury. Accordingly, we will not reverse the judgment of the trial court.
For the above-stated reasons, the judgment of the trial court is due to be, and is hereby, affirmed.
AFFIRMED.
All the Judges concur.