[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 373 
The appellant, Glen Dale Johnson, was charged with two counts of first-degree rape. The first count charged that Johnson had sexual intercourse with the victim by forcible compulsion, a violation of § 13A-6-61(a)(1), Ala. Code 1975; the second count alleged that Johnson engaged with sexual intercourse with the victim when Johnson was over the age of 16 and the victim was less than 12 years old, a violation of §13A-6-61(a)(3), Ala. Code 1975. As to count one, Johnson was convicted of the lesser-included offense of sexual abuse in the first degree, a violation of § 13A-6-66(a)(1); as to count two, Johnson was convicted of the lesser-included offense of sexual abuse in the first degree, a violation of §13A-6-66(a)(3). He was sentenced for each conviction as a habitual offender with three prior felony convictions to life imprisonment. See § 13A-5-9(c)(1), Ala. Code 1975. *Page 374 
The evidence at trial indicated that at the time of the incident, the victim was 11 years of age; Johnson was the victim's stepfather. The State's evidence indicated that Johnson did not live with the victim or her mother, but that he stayed there occasionally, including the night of October 11, 2002. The victim's mother testified that she and the victim's three siblings left the house at approximately 10:30 a.m. on the morning of October 12, 2002. She stated that the victim was still asleep and that Johnson was the only other person present in the home when they left.
The victim testified that she woke up that morning and went downstairs to wash the dishes. She stated that she went back upstairs to go to the bathroom. According to the victim, Johnson was standing upstairs and told her to come to him. She stated that she told him she was going to the bathroom. The victim testified that Johnson grabbed her and pulled her into her bedroom and threw her on the bed. She stated that he "snatched" her shorts off, removed her underwear, removed his clothes, and "stuck his penis inside" her. (R. 217.) According to the victim, Johnson was lying on her in such a way that she was pinned down and could not move. She testified that the acts were not consensual and that she fought him, scratched him, tried to push him off of her, and screamed the whole time. According to the victim, Johnson told her if she was not quiet he was going to get a knife. She stated that he then went downstairs to the kitchen, at which time she went downstairs to run out the front door because she believed he was going to get a knife. According to the victim, Johnson saw her as she went toward the front door and told her, "`If you go out the door, I'm gonna kill you.'" (R. 223.) She stated that she ran out the door to a neighbor's house.
The neighbor testified that the victim ran to her house crying for help and that she telephoned the police and handed the telephone to the victim so the victim could talk to the authorities. The evidence further indicated that an officer come to the neighbor's home and took the victim's statement at approximately 11:00 a.m. and that he and the victim walked back to the victim's residence but did not see Johnson at that time. The victim's aunt arrived and took the victim to the doctor for a rape examination.
The State presented evidence that the victim had a laceration with minimal bleeding and some abrasions in her vaginal area.[1] Forensic evidence indicated that a hair found on the victim's shorts was consistent with Johnson's, but that he could not be identified as the source of that hair.
The defense thoroughly cross-examined the victim about inconsistencies in her testimony at trial and prior statements she had made regarding the allegations, including her prior testimony that Johnson had flipped her over during the attack and penetrated her anally,[2] the description of the clothing she was wearing and whether she or law enforcement contacted her aunt to take her to the doctor for a rape test.
 I.
Johnson argues that the trial court erred in refusing to instruct the jury on the lesser-included offense of sexual *Page 375 
misconduct.[3] Specifically, he argues that there was evidence from which the jury could have concluded that sexual intercourse occurred without forcible compulsion.
Initially, we note that this claim was not preserved for appellate review. "No party may assign as error the court's . . . failing to give a written instruction . . . unless the party objects thereto before the jury retires to consider its verdict, stating the matter to which he or she objects and the grounds of the objection." Rule 21.3, Ala.R.Crim.P. See alsoGreenhill v. State, 746 So.2d 1064
(Ala.Crim.App. 1999); and Sanders v. State,683 So.2d 14 (Ala.Crim.App. 1996). Johnson did not object at the charge conference when the trial court indicated that the sexual-misconduct instruction was not going to be given. (R. 299-300.) Nor did he object after the trial court instructed the jury. (R. 344.)
Further, it is well-settled that "`"`"[a] party cannot assume inconsistent positions in the trial and appellate courts and, as a general rule, will not be permitted to allege an error in the trial court proceedings which was invited by him or was a natural consequence of his own actions."'"'" Moody v.State, 888 So.2d 532, 561 (Ala.Crim.App. 2003), (quotingBurgess v. State, 811 So.2d 557, 596
(Ala.Crim.App. 1998), quoting in turn other cases). Here, when the trial court stated that it was going to give an instruction on alibi as a defense, the trial court asked whether the defense would like for the jury to be instructed on any lesser-included offenses, and defense counsel informed the trial court that the defense "would ask that the lesser-included offense — I believe it's sexual abuse first degree — be given." (R. 310.)
Moreover, a jury instruction in sexual misconduct was not warranted by the evidence. See, e.g., Ayers v. State,594 So.2d 719 (Ala.Crim.App. 1991). For these reasons, Johnson is not entitled to any relief on this claim.
 II.
Johnson also argues that the trial court erred in denying his motion for a judgment of acquittal.[4] Johnson mixes in his argument sufficiency of the evidence and weight of the evidence.
"`In determining the sufficiency of the evidence to sustain a conviction, a reviewing court must accept as true all evidence introduced by the State, accord the State all legitimate inferences therefrom, and consider all evidence in a light most favorable to the prosecution.'" Ballenger v. State,720 So.2d 1033, 1034 (Ala.Crim.App. 1998), quoting Faircloth v.State, 471 So.2d 485, 488 (Ala.Crim.App. 1984),aff'd, 471 So.2d 493 (Ala. 1985). "`The test used in determining the sufficiency of evidence to sustain a conviction is whether, viewing the evidence in the light most favorable to the prosecution, a rational finder of fact could have found the defendant guilty beyond a reasonable doubt.'" Nunn v.State, 697 So.2d 497, 498 (Ala.Crim.App. 1997), quotingO'Neal v. State, 602 So.2d 462, 464
(Ala.Crim.App. 1992). "`When there is legal evidence from which the jury could, by fair inference, find the defendant guilty, the trial court should submit [the case] to the jury, and, in such a case, this court will not disturb the trial court's decision.'" Farrior v. State, 728 So.2d 691, 696
(Ala.Crim.App. 1998), quoting Ward v. State,557 So.2d 848, 850 (Ala.Crim.App. 1990). "The role of appellate courts is not to say what the facts are. *Page 376 
Our role . . . is to judge whether the evidence islegally sufficient to allow submission of an issue for decision [by] the jury." Ex parte Bankston,358 So.2d 1040, 1042 (Ala. 1978).
However, any "inconsistencies and contradictions in the State's evidence, as well as [any] conflict between the State's evidence and that offered by the appellant, [goes] to the weight of the evidence and create[s] questions of fact to be resolved by the jury." Rowell v. State, 647 So.2d 67, 69-70
(Ala.Crim.App. 1994). "`"[T]he credibility of witnesses and the weight or probative force of testimony is for the jury to judge and determine."'" Johnson v. State, 555 So.2d 818, 820
(Ala.Crim.App. 1989), quoting Harris v. State,513 So.2d 79, 81 (Ala.Crim.App. 1987), quoting in turn Byrd v.State, 24 Ala.App. 451, 451, 136 So. 431, 431 (1931). More importantly, "`[t]he question of the victim['s] credibility [is] one for the jury and not for this Court.'" Rowell,647 So.2d at 69, quoting Coats v. State, 615 So.2d 1260,1260 (Ala.Crim.App. 1992). "We have repeatedly held that it is not the province of this court to reweigh the evidence presented at trial." Johnson, 555 So.2d at 820. "`When the jury has passed on the credibility of evidence tending to establish the defendant's guilt, this Court cannot disturb its finding.'"Rowell, 647 So.2d at 69, quoting Collins v.State, 412 So.2d 845, 846 (Ala.Crim.App. 1982). Furthermore, "`[t]his Court must view the evidence in the light most favorable to the State, and "draw all reasonable inferences and resolve all credibility choices in favor of the trier of fact."'" D.L. v. State, 625 So.2d 1201, 1204
(Ala.Crim.App. 1993), quoting Woodberry v. State,497 So.2d 587, 590 (Ala.Crim.App. 1986). "Any issues regarding the weight and credibility of the evidence are not reviewable on appeal once the state has made a prima facie case." Jonesv. State, 719 So.2d 249, 255 (Ala.Crim.App. 1996),aff'd, 719 So.2d 256 (Ala. 1998).
Here, the victim testified that on October 12, 2002, when she was 11 years old, Johnson grabbed her, pushed her onto her bed and held her down, pulled off her clothes and removed his clothing, and inserted his penis into her vagina. She stated that she did not consent to the acts, that she tried to push him away, and that she fought him. She further stated that he threatened to get a knife if she did not stop screaming and that when he went to the kitchen, she ran out the front door. Additionally, she stated that when she went to the front door, Johnson told her he would kill her if she left. The victim's testimony, if believed, was sufficient to sustain Johnson's convictions. Further, the State's evidence indicated a laceration and some abrasions in the victim's vaginal area. Because the State presented a prima facie case that the acts were committed by forcible compulsion and that the victim was less than 12 years old and Johnson was more than 16 years old, this Court will not invade the province of the jury by going behind the jury's verdict to reweigh the evidence.
 III.
However, although we have determined that Johnson is not entitled to any relief on the claims raised on appeal, this Court must take judicial notice of jurisdictional defects contained in the record. Having reviewed the record, although the evidence supported a finding that the acts were committed either by forcible compulsion or when the victim was less than 12 years old and Johnson more than 16 years old, it is apparent that convictions under both subsections constituted a double-jeopardy violation. *Page 377 
Certain double-jeopardy transgressions have been viewed as waived if no timely objection is raised, while other double-jeopardy transgressions are viewed as not being subject to waiver. See Straughn v. State, 876 So.2d 492
(Ala.Crim.App. 2003), and the cases cited therein. The situation here is analogous to the situation in Ex parte Robey,920 So.2d 1069 (Ala. 2004), in which the Alabama Supreme Court stated:
 "In Ex parte Rice, 766 So.2d 143, 148
(Ala. 1999), we recognized the longstanding proposition that `the Double Jeopardy Clause, as a general rule, prohibits the State from subjecting a defendant to multiple punishments for the same offense.' In Blockburger v. United States, 284 U.S. 299, 304 (1932), the United States Supreme Court stated, `[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of a fact which the other does not.'
 "However, in Rice we stated, `Because we are dealing here with a single statute . . . that defines a single offense, the Blockburger test is not applicable.' 766 So.2d at 150 (citing Sanabria v. United States, 437 U.S. 54, 70 n. 24 (1978)). We also stated in Rice that *when a statute provides alternative or different methods of committing the same offense, each alternative method is not to be treated as a separate offense.' 766 So.2d at 150 (citing Sisson v. State, 528 So.2d 1159 (Ala. 1988)). In the instant case, Robey was convicted of two counts of first-degree assault under two subsections of the same Code section. . . .
 "We conclude that the offense of first-degree assault under § 13A-6-20(a) `may be committed by several different methods, and the State may allege and prove any one or all of those various methods in its attempt to establish the defendant's guilt.' Rice, 766 So.2d at 150. We have found no indication that the Legislature intended to impose multiple punishments under the separate subsections of § 13A-6-20(a) when the actions described in each of those subsections are based on the same conduct of the accused, as well as the same injuries to the same victim. Therefore, punishing Robey twice for the same offense — first-degree assault — violated his double-jeopardy rights."
Ex parte Robey, 920 So.2d at 1071.
Here, the evidence clearly indicated that both charges arose from a single incident. Thus, as in Robey, the appellant was charged with and convicted of two counts of violating one statutory offense based on alternative means of committing that offense. Therefore, we remand this case to the trial court with instructions that that court enter a new order that adjudges Johnson guilty of the single offense of sexual abuse in the first degree and sentences him for that single offense. See Rice, 766 So.2d at 152-53 ("[A]n appellate court's vacating one of [the defendant's] convictions and its corresponding sentence would have the effect, albeit unintended, of nullifying a part of the jury's verdict. We think the better approach is for the Court of Criminal Appeals to remand the case to the trial court for the entry of a new order — an order that adjudges [the defendant] guilty of [the victim's] murder and sentences him for that single offense."). See also Ex parte Robey, supra, andMcPherson v. State, 933 So.2d 1114
(Ala.Crim.App. 2005). On remand, the trial court shall take all necessary action to see that the circuit clerk makes due return to this court at the earliest possible time and within 28 days after the release of this opinion. *Page 378 
REMANDED WITH INSTRUCTIONS.*
COBB, BASCHAB, SHAW, and WISE, JJ., concur.
[1] The evidence indicated that the victim's hymen was still present, but that the medical examination was inconclusive as to whether the hymen was torn.
[2] The jury at Johnson's first trial rendered a not-guilty verdict as to the charge of sodomy, and a mistrial was declared as to the charge of rape when the jury was unable to reach a verdict.
[3] Claim II in Johnson's brief.
[4] Claim I in Johnson's brief.
* Note from the reporter of decisions: On August 18, 2006, on return to remand, the Court of Criminal Appeals affirmed, without opinion. *Page 1121