WELCH, Judge.
 

 In March 2006, Antonio Shawn Williams was indicted for two counts of first-degree rape and two counts of first-degree sexual abuse. All charges related to a single victim, V.C. The first count of rape charged that Williams had sexual intercourse with the victim by forcible compulsion, a violation of § 13A-6-61(a)(l), Ala. Code 1975. The second count of rape alleged that Williams engaged in sexual intercourse with the victim when Williams was over the age of 16 and the victim was less than 12 years old, a violation of § 13A-6-61(a)(3), Ala.Code 1975. The first count of sexual abuse charged that Williams subjected the victim to sexual contact by forcible compulsion, a violation of § 13A-6-66(a)(l), Ala.Code 1975. The second count of sexual abuse charged that Williams subjected the victim to sexual contact when Williams was over the age of 16 and the victim was less than 12 years old, a violation of § 13A-6-66(a)(3), Ala. Code 1975.
 
 [1]
 

 All four counts were submitted to the jury, and Williams was convicted of all four counts. On May 18, 2007, Williams was sentenced to a term of life imprisonment for each rape conviction and to 10 years’ imprisonment for each sexual-abuse conviction. The trial court ordered the sentences to be served consecutively.
 

 The evidence at trial indicated the following: At the time of the incidents made the basis of this prosecution, V.C. was five years of age. She resided in her grandfather’s house with her grandfather, her two sisters, and an uncle. Williams was the father of one of V.C.’s half sisters and would occasionally visit the grandfather’s house. He would take the children to church and to the playground. He would also on occasion bathe the children and put them to bed. In 2004, V.C. went to live with her father, his fiancée, and a half brother. Approximately four or five months after V.C. had been living with her father, the fiancée was giving V.C. a bath when V.C. told her that Williams used to give her a bath and that when Williams would bathe her he would touch her private parts with a towel. V.C. also told her that Williams put his private parts in her
 
 *1085
 
 and that he told her he would kill her if she told anyone what he had done.
 

 A few days after V.C. told her father’s fiancée about Williams, V.C. began complaining of a burning sensation in her vaginal area. She was taken to the doctor, who found a genital wart in the area outside the vagina and a genital wart on the hymen. The fiancée had thought the wart in the area outside the vagina was a mole. Genital warts are caused by human papil-lomavirus (“HPV”). According to the doctor, genital warts are unusual in a six-year-old, and their presence creates a strong suspicion that the child has been sexually abused by someone who is infected with HPV. The doctor testified that individuals can have HPV and show no outward symptoms; thus a person infected with HPV may have the disease and not even be aware of it. He stated that doctors cannot test for HPV and that most individuals infected with it never have genital warts. On cross-examination, the doctor stated that children can contract HPV from their mother via the blood or through contact with the virus during the birth process but that most children who acquire it at birth would have shown these symptoms by the age of three. Thus, the doctor stated, the general consensus is that children over the age of three who have symptoms of HPV have probably contracted it as the result of sexual contact with someone who has it.
 

 S.H., V.C.’s aunt, testified that on November 11, 2003, her brother telephoned her while she was at work and told her that he had just caught Williams “messing” with V.C. (R. 118.) S.H. took V.C. to the doctor. V.C. was asked if someone had been bothering her. V.C. stated that Williams had bothered her. When she was asked where Williams had “bothered” her, V.C. pointed to the area between her legs.
 

 Forensic interviewer and counselor Rachel Copeland with the Prescott House, a child advocacy center for victims of sexual or physical abuse, interviewed V.C. on June 28, 2005. Using diagrams of female and male anatomy, V.C. indicated that Williams put his penis in her vagina while she laid on the bed and that he put his hand on her vagina while he was giving her a bath. V.C. told Copeland that Williams stopped what he was doing in the bedroom when he heard someone walking down the hallway. The videotape of the interview was played for the jury. V.C.’s testimony at trial mirrored the statements she made during her interview. Copeland testified that V.C.’s statement is consistent with a child who has been sexually abused.
 

 Williams testified on his own behalf at trial. He denied ever bathing V.C. He stated that she would be in the bathtub with her sisters while he was bathing his daughter but that he did not touch her. He denied ever putting V.C. to bed. He testified that he did not rape or sexually abuse V.C. He went to the local health department on four different occasions where he was tested for four types of sexually transmitted diseases, and the test results were negative. On cross-examination, Williams admitted that he was not tested for HPV and that medical personnel at the health department examined his penis on only two occasions.
 

 I.
 

 Williams contends that the trial court erred in denying his motion for a judgment of acquittal and his motion for a new trial because, he says, the evidence was insufficient to establish a prima facie case of rape and sexual abuse. Although Williams couches his argument in terms of a challenge to the sufficiency of the evidence, his argument is a combination of a challenge
 
 *1086
 
 to both the sufficiency and the weight of the evidence.
 

 “The
 
 weight
 
 of the evidence is clearly a different matter from the
 
 sufficiency
 
 of the evidence. The
 
 sufficiency
 
 of the evidence concerns the question of whether, ‘viewing the evidence in the light most favorable to the prosecution, [a] rational fact finder could have found the defendant guilty beyond a reasonable doubt.’
 
 Tibbs v. Florida,
 
 457 U.S. 31, 37, 102 S.Ct. 2211, 2216, 72 L.Ed.2d 652 (1982). Accord,
 
 Prantl v. State,
 
 462 So.2d 781, 784 (Ala.Cr.App.1984). ...
 

 “In contrast, ‘[t]he
 
 “weight
 
 of the evidence” refers to “a determination [by] the trier of fact that a greater amount of credible evidence supports one side of an issue or cause than the other.” ’
 
 Tibbs v. Florida,
 
 457 U.S. at 37-38, 102 S.Ct. at 2216 (emphasis added).”
 

 Johnson v. State,
 
 555 So.2d 818, 819-20 (Ala.Crim.App.1989), on return to remand, 576 So.2d 1279 (Ala.Crim.App.1990), rev’d on other grounds, 576 So.2d 1281 (Ala.1991).
 

 With respect to the sufficiency-of-the-evidence claim, it is well settled that “ ‘[i]n determining the sufficiency of the evidence to sustain a conviction, a reviewing court must accept as true all evidence introduced by the State, accord the State all legitimate inferences therefrom, and consider all evidence in a light most favorable to the prosecution.’ ”
 
 Ballenger v. State,
 
 720 So.2d 1033, 1034 (Ala.Crim.App.1998), quoting
 
 Faircloth v. State,
 
 471 So.2d 485, 488 (Ala.Crim.App.1984), aff'd, 471 So.2d 493 (Ala.1985). “ ‘The test used in determining the sufficiency of evidence to sustain a conviction is whether, viewing the evidence in the light most favorable to the prosecution, a rational finder of fact could have found the defendant guilty beyond a reasonable doubt.’”
 
 Nunn v. State,
 
 697 So.2d 497, 498 (Ala.Crim.App.1997), quoting
 
 O’Neal v. State,
 
 602 So.2d 462, 464 (Ala.Crim.App.1992). “ ‘When there is legal evidence from which the jury could, by fair inference, find the defendant guilty, the trial court should submit [the case] to the jury, and, in such a case, this court will not disturb the trial court’s decision.’ ”
 
 Farrior v. State,
 
 728 So.2d 691, 696 (Ala.Crim.App.1998), quoting
 
 Ward v. State,
 
 557 So.2d 848, 850 (Ala.Crim.App.1990). “The role of appellate courts is not to say what the facts are. Our role ... is to judge whether the evidence is
 
 legally
 
 sufficient to allow submission of an issue for decision [by] the jury.”
 
 Bankston v. State,
 
 358 So.2d 1040, 1042 (Ala.1978).
 

 Section 13A-6-66(a)(3), Ala.Code 1975, which has been deleted from § 13A-6-66(a), effective July 1, 2006, provided that the offense of sexual abuse in the first degree occurred when an individual 16 years of age or older subjected another individual who was less than 12 years of age to sexual contact. Sexual contact is defined as “[a]ny touching of the sexual or other intimate parts of a person not married to the actor, done for the purpose of gratifying the sexual desire of either party.” § 13A-6-60(3), Ala.Code 1975.
 

 Section 13A-6-66(a)(l), Ala.Code 1975, provides that the offense of sexual abuse in the first degree can also occur when an individual subjects another individual to sexual contact by forcible compulsion.
 

 Section 13A-6-61(a)(l), AIa.Code 1975, provides that a person is guilty of rape in the fust degree when that person engages in sexual intercourse with another by forcible compulsion.
 

 Section 13A-6-61(a)(3), Ala.Code 1975, provides that a person is guilty of rape in the first degree when that person, being 16 years of age or older, engages in sexual intercourse with a person who is less than 12 years of age.
 

 
 *1087
 
 Here, the victim, who was eight years old at the time of trial, testified that Williams put his private part in her private part and that she did not tell anyone because she was afraid. V.C. also testified that when Williams bathed her he would use a towel to touch her private part. Testimony was also presented, and the jury could see for itself, that Williams was over the age of 16. Whether Williams touched V.C. in the bathtub to gratify his sexual desires “ ‘is a question for the jui-y and may be inferred from the act itself.’ ”
 
 Ex parte A.T.M.,
 
 804 So.2d 171, 174 (Ala.2000), quoting
 
 Roughton v. State,
 
 644 So.2d 1389, 1340 (Ala.Crim.App.1994). “[T]he victim’s testimony alone is sufficient to establish a prima facie case of either rape or sexual abuse.”
 
 Jones v. State,
 
 719 So.2d 249, 255 (Ala.Crim.App.1996). The element of forcible compulsion may be established by the relationship of a child victim with the defendant charged with the offense. The authority of Williams, as the father of one of V.C.’s sisters and as one who often assumed a parental role, was sufficient to establish the element of forcible compulsion. See
 
 Powe v. State,
 
 597 So.2d 721, 726-27 (Ala.1991). Thus, the State presented a prima facie case that Williams committed both rape and sexual abuse by forcible compulsion and that the victim was less than 12 years old and that Williams was more than 16 years old.
 

 With respect to the weight of the evidence, it is well-settled that any “inconsistencies and contradictions in the State’s evidence, as well as [any] conflict between the State’s evidence and that offered by the appellant, [go] to the weight of the evidence and [create a question] of fact to be resolved by the jury.”
 
 Rowell v. State,
 
 647 So.2d 67, 69-70 (Ala.Crim.App.1994). “ ‘ “[T]he credibility of witnesses and the weight or probative force of testimony is for the jury to judge and determine.” ’ ”
 
 Johnson v. State,
 
 555 So.2d 818, 820 (Ala.Crim.App.1989), quoting
 
 Harris v. State,
 
 513 So.2d 79, 81 (Ala.Crim.App.1987), quoting in turn
 
 Byrd v. State,
 
 24 Ala.App. 451, 451, 136 So. 431, 431 (1931). “We have repeatedly held that it is not the province of this court to reweigh the evidence presented at trial.”
 
 Johnson,
 
 555 So.2d at 820. “ ‘When the jury has passed on the credibility of evidence tending to establish the defendant’s guilt, this Court cannot disturb its finding.’ ”
 
 Rowell,
 
 647 So.2d at 69, quoting
 
 Collins v. State,
 
 412 So.2d 845, 846 (Ala.Crim.App.1982). Furthermore, “‘[tjhis Court must view the evidence in the light most favorable to the State, and “draw all reasonable inferences and resolve all credibility choices in favor of the trier of fact.” ’ ”
 
 D.L. v. State,
 
 625 So.2d 1201, 1204 (Ala.Crim.App.1993), quoting
 
 Woodberry v. State,
 
 497 So.2d 587, 590 (Ala.Crim.App.1986). “Any issues regarding the weight and credibility of the evidence are not reviewable on appeal once the state has made a prima facie case.”
 
 Jones v. State,
 
 719 So.2d at 255. Having already determined that the State made a prima facie case of both counts of rape in the first degree and both counts of sexual abuse in the first degree, this Court will not review on appeal the weight of the evidence or the credibility of the witnesses.
 

 II.
 

 Although we have determined that Williams is not entitled to any relief on the claim raised on appeal, this Court must take judicial notice of jurisdictional defects. See
 
 State v. Isbell,
 
 955 So.2d 476 (Ala.Crim.App.2006)(noting that this court has a duty to notice jurisdictional defects ex mero motu). Although the evidence supported findings that the acts were committed by forcible compulsion and that the victim was less than 12 years old and that Williams was more than 16 years old, it is apparent that convictions for rape under
 
 *1088
 
 both §§ 13A-6-61(a)(l) and (a)(3) and convictions for sexual abuse under both §§ 13A-6-66(a)(l) and (a)(3) constituted double-jeopardy violations.
 

 In
 
 Ex parte Robey,
 
 920 So.2d 1069 (Ala.2004), the Alabama Supreme Court stated that in cases dealing with a single statute that defines a single offense, the
 
 Blockbur-ger
 

 [2]
 
 test is not applicable. The Court stated that “ ‘when a statute provides alternative or different methods of committing the same offense, each alternative method is not to be treated as a separate offense.’ ” 920 So.2d at 1071, quoting
 
 Ex parte Rice,
 
 766 So.2d 143, 150 (Ala.1999). Relying on
 
 Robey,
 
 this Court in
 
 Johnson v. State,
 
 950 So.2d 371 (Ala.Crim.App.2006), held that two convictions for sexual abuse in the first degree arising from the same incident violated the defendant’s rights to be protected from double jeopardy.
 

 Here, although the fiancée testified that Y.C. told her Williams put his private part inside her three times, the evidence indicated that the rape charge arose from a single incident in the bedroom. Although V.C. testified that Williams touched her on her private part three times while he was bathing her, the record was unclear whether Williams touched her on three separate occasions or whether the touches occurred during a single incident in the bathroom. Based on the evidence, Williams’s motion for a judgment of acquittal, and the trial court’s jury charge, the State appeared to be prosecuting Williams under alternate theories of rape for a single incident and under alternate theories of sexual abuse for a single incident rather than charging separate counts of rape for separate incidents and separate counts of sexual abuse for separate incidents. As in
 
 Robey
 
 and as in
 
 Johnson,
 
 Williams was “charged with and convicted of two counts of violating one statutory offense based on alternative means of committing that offense.” 950 So.2d at 377. See also
 
 King v. State,
 
 574 So.2d 921 (Ala.Crim.App.1990).
 

 Therefore, in accordance with
 
 Ex parte Rice,
 
 supra, and
 
 Carlisle v. State,
 
 963 So.2d 170 (Ala.Crim.App.2006), we remand this case for the trial court to enter a new order that adjudges Williams guilty of one count of rape and one count of sexual abuse and sentences him for each of those single offenses. The trial court shall take all necessary action to see that the circuit clerk makes due return to this court at the earliest possible time and within 42 days after the release of this opinion.
 

 REMANDED WITH INSTRUCTIONS.
 

 BASCHAB, P.J., and McMILLAN and SHAW, JJ., concur.
 

 [1]
 

 . This statute was amended, effective July 1, 2006, to delete subsection (a)(3). The provision of § 13A-6-66(a)(3) were reenacted as § 13A-6-69.1, and the offense was made a Class B felony.
 

 [2]
 

 . In
 
 Blockburger v. United States,
 
 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932), the United States Supreme Court stated: "[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.”