JOINER, Judge.
Melvin Rudolph was convicted of one count of first-degree rape by forcible compulsion,. see § 13A-6-61(a)(l), Ala.Code 1975, one count of first-degree rape of a child less than 12 years old, see § 13A-6-61(a)(3), and one count of first-degree sexual abuse by forcible compulsion, see § 13A-6-66(a)(l), Ala.Code 1975. Rudolph was sentenced to serve 50 years’ imprisonment for each rape conviction and 10 years’ imprisonment for the sexual-abuse conviction; those sentences were ordered to be served consecutively.[1]
The State’s evidence at trial tended to show the following. S.G., who was 14 years old at the time of trial, testified that, during the summer of 2012 she lived with her grandmother and that Rudolph was her grandmother’s “helper around the house.” (R. 25.) S.G. testified that Rudolph sometimes slept at - her grandmother’s house. S.G. testified that, one evening that summer, she gave her grandmother her medication and that her grandmother went to sleep. S.G. testified that she locked the doors of her grandmother’s house and went to her room to go to sleep. S.G. testified that Rudolph was the only other person in the house and that he was asleep on a couch when she went to her room. S.G. testified that, later in the evening, she was alone in her room sleeping when Rudolph tapped on her shoulder and woke her up. S.G. testified that Rudolph pulled her shorts and underwear down, climbed on top of her, pinned her down, and penetrated her, vagina with his penis. *1188 S.G. testified that she knew that Rudolph was the man who raped her because she could smell alcohol on his breath, and she knew that Rudolph had been drinking earlier that day. S.G. testified that, after Rudolph left her room, she locked herself in her closet and stayed there until morning because she was afraid of Rudolph.
S.G. testified that, later that summer, Rudolph attempted to assault her again but she was able to fight him off. S.G. testified that she was sitting on a couch watching television when Rudolph came into the room and “started pulling on [her] shoulder.” (R. 36.) S.G. testified that she pushed him away, but that Rudolph “kept on.” (R. 36.) S.G. stated, “After he tried to get on top of me, it was a [baseball] bat, like, right there on the edge of the sofa, and I got it and hit him on the head and ran.” (R. 36-37.) S.G. testified that she hit Rudolph because she “didn’t want the same thing to happen.” (R. 37.) S.G. identified Rudolph in court.
L.R., S.G.’s grandmother, testified that she lives in Lowndes County and that S.G. had stayed with her “for a good period of time” during the summer of 2012 and that S.G. was 11 years old at that time. (R. 60.) L.R. testified that she and Rudolph had been family friends for at least 30 years and that he helped her around the house after she began suffering health problems in 2012. L.R. testified that, after the summer of 2012, S.G. began exhibiting behavioral problems and her grades began to drop. L.R. testified that S.G. told her that “[s]he never want[s] a man to touch her again and she want[s] to be ugly.” (R. 64.)
Lashun Hutson, an investigator with the Lowndes County Sheriffs Department, testified that he was contacted by a counselor at S.G.’s middle school who reported the rape and assault to him. Investigator Hutson testified that he watched an interview with S.G. and also spoke with S.G. personally. Investigator Hutson testified that, as a result of his investigation, he obtained warrants against Rudolph. Investigator Hutson testified that, during the summer of 2012, Rudolph was 51 years old.
After the State rested, Rudolph moved for a judgment of acquittal on the ground that the State failed to prove each element of the offenses of first-degree rape and first-degree sexual abuse. The trial court denied his motion. After the defense rested, Rudolph renewed his motion for a judgment of acquittal, and the trial court again denied his motion. Rudolph was ultimately convicted of all charges.
On appeal, Rudolph claims that the weight and the sufficiency of the State’s evidence were insufficient to sustain his convictions.
“ ‘ “The weight of the evidence is clearly a different matter from the sufficiency of the evidence. The sufficiency of the evidence concerns the question of whether, ‘viewing the evidence in the light most favorable to the prosecution, [a] rational fact finder could have found the defendant guilty beyond a reasonable doubt.’
“ ‘ “In contrast, ‘the “weight of the evidence” refers to a “determination [by] the trier of fact that a greater amount of credible evidence supports one side of an issue or cause than the other.” ’ We have repeatedly held that it is not the province of this [C]ourt to reweigh the evidence presented at trial. ‘ “The credibility of witnesses and the weight or probative force of testimony is for the jury to judge and determine.” ’ ” ’
“Seaton v. State, 645 So.2d 341, 342-43 (Ala.Crim.App.1994), quoting Johnson v. State, 555 So.2d 818, 819-20 (Ala.Crim.App.1989) (citations omitted).
“ ‘Once a prima facie case has been submitted to the jury, this Court will *1189 not upset the jury’s verdict except in extreme situations in which it is clear from the record that the evidence against the accused was so lacking as to make the verdict wrong and unjust. Deutcsh v. State, 610 So.2d 1212, 1234-35 (Ala.Cr.App.1992). This Court will not substitute itself for the jury in determining the weight and probative force of the evidence. Benton v. State, 536 So.2d 162, 165 (Ala.Cr.App.1988).’
“May v. State, 710 So.2d 1362, 1372 (Ala.Crim.App.1997).
“ ‘Furthermore, on appeal, there is a presumption in favor of the correctness‘of the jury verdict. Saffold v. State, 494 So.2d 164 (Ala.Cr.App.1986). Although that presumption of correctness is strong, it may be overcome in a limited category of cases where the verdict is found to be palpably wrong or contrary to the great weight of the evidence. Bell v. State, 461 So.2d 855, 865 (Ala.Cr.App.1984).’
“Henderson v. State, 584 So.2d 841, 851 (Ala.Crim.App.1988).”
Thompson v. State, 97 So.3d 800, 810 (Ala.Crim.App.2011). It is well settled that “[t]he weight and probative value to be given to the evidence, the credibility of the witnesses, the resolution of conflicting testimony, and inferences to be drawn from the evidence are for the jury.” Smith v. State, 698 So.2d 189, 214 (Ala.Crim.App.1996), aff'd, 698 So.2d 219 (Ala.1997).
A. Weight of the State’s Evidence
Rudolph’s claim that the weight of the State’s evidence was insufficient to sustain his convictions is not preserved. “The issue of the weight of the evidence is preserved by a motion for a new trial stating ‘that the verdict is contrary to law or the weight of the evidence.’ ” Zumbado v. State, 615 So.2d 1223, 1241 (Ala.Crim.App.1993); see also Rule 24.1(c), Aa. R.Crim. P. The record does not indicate that Rudolph filed a motion for a new trial. Moreover, even if his claim ha'd been preserved, it is not properly before this Court because, as noted above, “[t]he weight and probative value to be given to the evidence ... aré for the jury.” Smith, 698 So.2d at 214. This court will not invade the province of the jury to re-weigh the evidence in this case and, therefore, Rudolph is not entitled to relief on this issue.
B. Sufficiency of the State’s Evidence
In order to convict Rudolph of first-degree rape under § 13A-6-61(a)(3), the State must prove that Rudolph, “being 16 years or older, engage[d] in sexual intercourse with a member of the opposite sex who is less than 12 years old.” Section 13A-6-60(l), Aa.Code 1975, defines “sexual intercourse” as having “its ordinary meaning and occurs upon any penetration, however slight; emission is not required.” L.R. testified that S.G. was 11 years old during the summer of 2012. Investigator Hutson testified that Rudolph was 51 years old at the time of the incident. S.G. testified that Rudolph entered her bedroom one evening while she was sleeping, woke her up, removed her shorts and underwear, climbed on top of her, pinned her down, and penetrated her vagina with his penis. This Court has held that “[t]he uncorroborated testimony of a rape victim can support a rape conviction. Johnson v. State, 365 So.2d 123 (Ala.Crim.App.) cert. denied, 365 So.2d 130 (Ala.1978).” Garrett v. State, 580 So.2d 58, 61 (Ala.Crim.App.1991). Accordingly, the State’s evidence was sufficient to sustain Rudolph’s conviction of first-degree rape under § 13A-6-61(a)(3), Aa.Code 1975.
In order to convict Rudolph of first-degree rape under § 13A-6-61(a)(l), the State must prove that Rudolph “engaged in sexual intercourse with a member of the opposite sex by forcible compulsion.” *1190 Section 13A-6-60(8), Ala.Code 1975, defines “forcible compulsion” as “[physical force that overcomes earnest resistance or a threat, express or. implied, that places a person in fear of immediate death or serious physical injury to himself or another person.” S.G.’s testimony, as noted above, was sufficient evidence to sustain Rudolph’s conviction of first-degree rape under § 13A-6-61(a)(l), Ala. Code 1975.
With respect to the first-degree-sexual-abuse conviction, Rudolph claims that the State’s evidence was insufficient because it adduced “no proof of sexual contact.” (Rudolph’s brief, p. 9.)
In Ex parte McCormick, 932 So.2d 124, 132 (Ala.2005), the Alabama Supreme Court stated:
“In any case involving statutory construction, our inquiry begins with the language of the statute, and if the meaning of the statutory language is plain, our analysis ends there. Ex parte Moore, 880 So.2d 1131, 1140 (Ala.2003) (‘ “ ‘The cardinal rule of statutory interpretation is to determine and give effect to the intent of the legislature as manifested in the language of the statute.’ ” ’) (quoting Ex parte Weaver, 871 So.2d 820, 823 (Ala.2003), quoting in turn Ex parte State Dep’t of Revenue, 683 So.2d 980, 983 (Ala.1996)). This Court in DeKalb County LP Gas Co. v. Suburban Gas, Inc., 729 So.2d 270, 275-76 (Ala.1998), explained:
“ ‘In determining the meaning of a statute, this Court looks to the plain meaning of the words as written by the legislature. As we have said:
“ ‘ “ ‘Words used in a statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says. If the language of the statute is unambiguous, then there is no room for judicial construction and the clearly expressed intent of the legislature must be given effect,’ ” ’
“729 So.2d at 275-76 (quoting Blue Cross and Blue Shield v. Nielsen, 714 So.2d 293, 296 (Ala.1998), additional citations omitted). See also 729 So.2d at 276 (explaining that the separation-of-powers doctrine requires a court to use the plain-meaning rule in construing a statute and that ‘only if there is no rational way to interpret the words as stated wilí [a court] look beyond those words to determine legislative intent’).”
Looking at the plain meaning of the statute, in order to convict Rudolph of first-degree sexual abuse under § 13A-6-66(a)(1), the State must prove that Rudolph “subjected] another person to sexual contact by forcible compulsion.” Section 13A-6-60, Ala. Code 1975, defines “sexual contact” as “[a]ny touching of the sexual or other intimate parts of a person not married to the actor, done for the purpose of gratifying the sexual desire of either party.” The statute requires, under its plain language, that sexual contact must involve touching of either “sexual” or “intimate parts.”
“ ‘Common use of the English language would indicate that the term “intimate parts,” in the context of the statute, refers to any part of the body which a reasonable person would consider private with respect to touching by another.’ Parker v. State, 406 So.2d 1036 (Ala.Cr.App.1981), cited in Hutcherson v. State, 441 So.2d 1048 (Ala.Cr.App.1983).”
Phillips v. State, 505 So.2d 1075, 1077 (Ala.Crim.App.1986). “Intimate” is defined as “of a very personal or private nature.” Merriam-Webster’s Collegiate Dictionary 613 (11th ed.2003). “Private” is defined as “intended for or restricted to the use of a particular person.” Mer *1191 riam-Webster’s Collegiate Dictionary 927 (11th ed.2003). In the instant case, the only evidence of touching with respect to the underlying event which gave.rise to the sexual-abuse charge was S.G.’s testimony that Rudolph approached her and “started pulling on [her] shoulder.” (R. 36.) There is no Alabama caselaw interpreting the act of touching another’s shoulder — as unwanted as the contact may be— as touching a “sexual” or “intimate part” of another. Therefore, we question whether Rudolph’s touching of S.G.’s shoulder, in what S.G. testified was an attempt to rape her again, constitutes touching an “intimate part' ... for the purpose of gratifying [Rudolph’s] sexual desire.”
The State argues that the evidence was, in fact, sufficient to prove that Rudolph subjected S.G. to sexual contact. In support of its contention, the State cites Commonwealth v. Capo, 727 A.2d 1126, 1127 (Pa.Super.1999), for the proposition that “through its use of the ‘intimate parts’ language in Pennsylvania’s indecent assault statute ..., the Pennsylvania Legislature indicated an intention that the touching of a shoulder could constitute ‘sexual contact,’ so long as it was done with the purpose of gratifying the sexual desire of the actor.” (State’s brief, p. 15 n.l.) That case is distinguishable from the instant case, however, because the appellant in Capo, supra, touched more than the victim’s shoulder:
“M.A. and two of heh friends were waiting in a hotel lobby for rides home from school. While they sat at a table talking, Appellant entered the lobby and sat down closeby. He began drawing on a sketchpad, occasionally looking up at M.A. She felt extremely uncomfortable and therefore decided to leave. As M.A. and her friends began to exit the hotel, Appellant got up from his table and told her that she should wait, holding up an unfinished drawing of her.
“Flattered by the likeness of the sketch, M.A. agreed to sit down at the table with Appellant so that he could finish the drawing; she sat in between her two friends. After approximately 45 minutes, M.A. stood up to leave because her ride had arrived. Her friends did the same, and walked ahead of M.A. toward the hotel exit. Appellant forcibly grabbed M.A. by the upper arm, repeating several -times that he was not finished. As she struggled to free herself from his grip, Appellant attempted to kiss M.A. on the mouth, reaching only her face and neck. After Appellant freed one of the victim’s arms, he rubbed her shoulders, back and stomach until she was able to pull away.”
727 A.2d at 1126-27. Because the facts of the Capo case are sufficiently distinct from those of the instant case, that decision is not persuasive here.
Under the facts of this case, we cannot say that the State adduced sufficient evidence to prove that Rudolph subjected S.G. to sexual contact in support of a pri-ma facie case of first-degree sexual abuse. Therefore, Rudolph’s' motion for a judgment of acquittal with respect to the sexual-abuse charge was due to be granted at the close of the State’s case. Accordingly, as to the conviction for first-degree sexual abuse, that conviction is reversed and a judgment of acquittal is rendered in Rudolph’s favor.
C. Double-Jeopardy Issue
Although we have determined that Rudolph is not.entitled to relief with respect to his claim challenging the sufficiency of the evidence as to his rape convictions, this Court has a duty to notice jurisdictional defects. See, e.g., Brooks v. State, 76 So.3d, 275, 285 (Ala.Crim.App.2011) (citing Williams v. State, 10 So.3d 1083 (Ala.Crim.App.2008)). Here, this case presents the possibility that Ru *1192 dolph’s two convictions for first-degree rape arising out of the same incident violate the prohibition against double jeopardy. Thus, regardless of Rudolph’s failure to raise this issue, we must address it on appeal.
Rudolph was indicted by the Lowndes County grand jury in case no. CC-15-23 as follows:
“Thé' Grand Jury of said County charges that before the finding of this Indictment, Melvin Rudolph, whose name is to the Grand Jury otherwise unknown, did within the above-named county, on or about the time period of June 2012 through August 2012, being a male 16 years old or older, engage in sexual intercourse with a female, to-wit: S.M.G., who was less than 12 years of age, contrary to and in violation of Section 13A-6-61(a)(3) of the Code of Alabama 1975, against the peace and dignity of the State of Alabama,.”
(C. 22.) Rudolph was indicted by the Lowndes County grand jury in case no. CC-15-25 as follows:
“The Grand Jury of said County charges that before the finding of this Indictment, Melvin Rudolph, whose name is to the Grand Jury, otherwise unknown, did within the above named county,, on or about the time period of June. 20Í2 through August 2012, engage in the sexual intercourse with a female, to-wit: S.M.G., by forcible compulsion, contrary to.and in violation of Section 13A-6-61(a)(l) of the Code of Alabama 1975, against the peace and’ dignity of the State of Alabama.”
(C. 90.)
The Alabama Supreme Court has held that “where there are two different methods of proving the offense charged in one statute, they [do not] constitute separate offenses.” Sisson v. State, 528 So.2d 1159, 1162 (Ala.1988.) In King v. State, 574 So.2d 921, 929-30 (Ala.Crim.App.1990), this Court discussed whether an appellant could be convicted of two counts of first-degree rape arising out of a single event. We stated:
“[W]e must determine whether an individual may be convicted of two counts contained in the same statute. As our Supreme Court stated in Sisson v. State, 528 So.2d 1159 (Ala.1988), ‘[T]he two subsections of a similar statute were merely alternative methods of proving the same crime, and therefore, did not constitute separate offenses.’
[[Image here]]
“... [W]e find that the appellant could not be convicted of ... two counts of the same statute. ‘The Double Jeopardy Clause ... protects against multiple punishments for the same offense, [citation omitted]. Where consecutive sentences are imposed at a single criminal trial, the role of the constitutional guarantee is limited to assuring that the court does not exceed its legislative authorization by imposing multiple punishments for the same offense.’ Brown v. Ohio, 432 U.S. 161, 165, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187 (1977).”
As a result of a single event, Rudolph was convicted of two counts of first-degree rape under two different subsections of § 13A-6-61, Ala.Code 1975, and was sentenced to consecutive sentences as a result of those convictions. Because his conduct did not constitute two separate offenses, we hold that: Rudolph’s convictions and sentences for first-degree rape violate the prohibition against double jeopardy.
Based on the foregoing, this case is reversed as to Rudolph’s first-degree sexual-assault conviction and a judgment is rendered in Rudolph’s favor as to that conviction; further, the case is remanded to the circuit court ■ with instructions that that court vacate one of Rudolph’s first-degree rape convictions and sentences and file a return with this court within 90 days. The *1193 fírst-degree-rape conviction and sentence to be vacated shall be determined by the trial judge.
REVERSED IN PART; JUDGMENT RENDERED IN PART; AND REMANDED WITH INSTRUCTIONS. 
WINDOM, P.J., and WELCH, KELLUM, and BURKE, JJ., concur.

. For the rape-af-a-child-less-than-12-years-old conviction, Rudolph was ordered to pay a $500 fine, $125 in restitution, a $100 crime-victims-compensation assessment, a $750 bail-bond fee, and attorney’s fees. For the rape-by-forcible-compulsion conviction, Rudolph was ordered to pay a $500 fine, a $100 crimé-victims-compensation assessment, attorney’s fees, and court costs. For the sexual-abuse conviction, Rudolph was ordered to pay a $500 fine, a $100 crime-victims-compensation assessment, and attorney’s fees.