PATTERSON, Retired Appellate Judge.
The appellant, William Kent Walker, was indicted by the Mobile County grand jury on April 5, 2000, in eight separate cases, numbered CC-2000-1102 through - 1109, for robbery in the first degree. Ala. Code 1975, § 13A-8-41(a)(l). On April 26, 2000, he entered pleas of not guilty in all cases. Cases numbered CC-2000-1103 through -1109 were consolidated for trial on the motion of the State. On June 14, 2000, he withdrew his not-guilty pleas and entered “blind” pleas of guilty in cases numbered CC-2000-1103 through -1105.[1] On that same date, the trial court conducted an extensive examination of the appellant and his counsel in reference to the entry of the guilty pleas, including a discussion of the motion to enter a guilty plea, a document commonly referred to as an “Ireland” form,[2] that the appellant had filed. After determining that the appellant had entered his pleas knowingly, intelligently, and voluntarily, the trial court accepted those guilty pleas, ordered a pre-sentence investigation and report, and set a date for the sentencing hearing.
On August 18, 2000, the trial court sentenced the appellant to 20 years’ imprisonment in each of the three cases and ordered that the sentences be served concurrently. The trial court further ordered the appellant in each case to pay $50 to the victims compensation fund, costs of court, and restitution, and conditioned any early release, parole, or participation in the “SIR” program on payment of all amounts ordered. The amount of restitution was not determined at that time, but was left to be determined by the district attorney’s office, to be paid “at the instruction of Probation Officer.”
On September 15, 2000, the appellant, acting pro se, filed a motion to withdraw his guilty pleas, alleging (1) that he was not guilty of any crime; (2) that his trial counsel never contacted his witness, although he told the appellant that his witness did not want to be involved; (3) that he entered the guilty pleas because his counsel told him that if he went to trial, he would be convicted and be sentenced to life in prison; (4) that he was placed in an “extremely distressful situation” and feared getting life in prison; (5) that his counsel lied about his witness, and he feels “his lawyer may have lied about many other things” in his cases; and (6) that he “did not have knowledge of his lawyer’s lie until after being sentenced.” The trial court removed trial counsel, who had been retained by the appellant, because of a conflict of interest created by the appellant’s allegations, and appointed new counsel to represent the appellant in the proceedings to set aside his guilty pleas. From arraignment until the filing of this motion, the appellant had been represented by retained counsel. After an eviden-tiary hearing, the trial court denied the motion.
The appellant filed a notice of appeal, and the trial court appointed new counsel to represent him on appeal. Appellate counsel filed a no-merit brief pursuant to Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), stating that he had reviewed the facts and the applicable law and found no ground for reversal of the trial court’s denial of the appellant’s motion to withdraw his guilty *865 pleas. The appellant, after receiving a copy of his counsel’s Anders brief, filed a pro se brief, raising the following issues: (1) that he was innocent of the crimes and had pleaded guilty because he was faced with the possibility of a life sentence if he went to trial and was convicted; (2) that his trial counsel had coerced him into pleading guilty by telling him he would be convicted if he went to trial, and by telling him that his father said that he should plead guilty; (3) that his co defendant had “made up the person he said he was with”; (4) that his counsel had failed to contact his alibi witness; and (5) that his counsel had told him that it was in his best interest to plead guilty. His appointed appellate counsel responded by letter addressed to this Court, stating that he had read the issues raised by the appellant, had again reviewed the transcript and plea colloquy, and still did not see anything “that would require the Court to set aside the guilty pleas.”
We ordered the parties to brief two issues: (1) whether the trial court’s denial of the appellant’s motion to withdraw his guilty pleas was supported by the evidence before the court, and (2) whether the trial court’s order directing that the amount of restitution be determined by the district attorney’s office and paid at the instruction of the probation officer was proper and within the court’s authority. The parties have filed briefs in accordance with our instructions, and these cases are now before us for review and decision.
At the beginning of the hearing on the motion to withdraw the guilty pleas, the trial court asked the appellant why he wanted to withdraw his pleas. He responded:
“Well, I feel as though that I really didn’t commit any crime and that I was more or less scared of getting a whole lot of time for something I didn’t do and was led to believe that that would be the right thing or the best thing to do, and it really is not.”
(R. 18.) The trial court then asked the appellant’s trial counsel, who was present, if he had read the appellant’s motion to withdraw the guilty pleas, and he said that he had. The trial court then asked trial counsel to explain his position on the appellant’s motion. Trial counsel responded:
“Your Honor, I explained to him the range of punishment in each of these cases. He was originally charged with nine counts of robbery in the first degree. I explained to him the strengths and weaknesses of his case[s] the day of trial. I explained to him what I thought was in his best interest, that he had to make the decision as to whether or not to proceed to trial or to take the plea[s], “He had approximately 15 or 20 minutes in which he sat in the back and thought about whether or not to proceed to trial. I feel that he understood that it was his decision to make. He made the plea[s] on the day of trial, and that he felt like it was in his best interest at that time, I believe he was fully informed of his constitutional rights for the jury trial and that he waived them voluntarily.”
(R. 19.)
The appellant testified at the motion hearing, acknowledging that he knowingly answered the questions put to him by the trial court during the guilty-plea proceedings and that he executed the Ireland form with an understanding of its meaning and consequences. He testified that he had completed the twelfth grade, that he could read and write, and that he understands the English language. He further testified that he was innocent and that trial counsel coerced him into pleading guilty by telling him that if he went to trial he would be convicted and would get a life sentence. He also testified that trial coun *866 sel had lied to him when he told him that his father had recommended that he plead guilty, and that this had had some bearing on his decision to plead guilty. The appellant’s uncle, Steven William Walker, Sr., testified at the hearing. He stated that the appellant’s father had told him that he did not recommend to trial counsel that the appellant plead guilty. The State attempted to call the appellant’s trial counsel as a witness, but the trial court refused to order him to testify after the appellant refused to waive his attorney-client privilege.[3]
The plea colloquy, which is part of the record, shows that the trial court examined the appellant extensively before it accepted his pleas. The colloquy also shows that the appellant was questioned at length about the Ireland form he and counsel had executed and filed in the proceedings. The record of the colloquy reads, in pertinent part:
“The Court: Mr. Walker, the law requires that I ask you certain questions, and the answers to those questions must be given by you rather than your attorney. Do you understand that?
“[The appellant]: Yes, Your Honor.
“The Court: I show you what I have marked Court’s Exhibit Number 1 [the Ireland form], and ask you if that’s your signature that appears at the bottom of the second page?
“[The appellant]: Yes, it is, Your Honor.
“The Court: The document states ... [y]ou’re 27 years of age. You’ve completed the 12th grade in school and you can read, write and understand the English language; is that correct?
“[The appellant]: Yes, sir.
“The Court: That you’re represented by your attorney, Mr. Peter Palughi, and he’s discussed your cases at length with you. Have you had sufficient time to talk to Mr. Palughi about your cases?
“[The appellant]: Yes, I have.
“The Court: Are you satisfied with the services he’s rendered you?
“[The appellant]: Yes, I am, Your Hon- or.
“The Court: You understand that the three indictments now charge you with the offenses of robbery in the first degree?
“[The appellant]: Yes, I do.
“The Court: Has Mr. Palughi told you what the State would have to prove in each of these cases in order to find you guilty of those offenses?
“[The appellant]: Yes, he has.
“The Court: You understand that if you enter pleas of guilty to those offenses, they are Class A felony offenses normally punishable from ten years to 99 years or life and a fine of up to $20,000. Because a firearm is involved, the minimum punishment is 20 years. Do you understand that?
“[The appellant]: Yes, I do, Your Honor. “The Court: You do have certain constitutional rights attendant with these charges. The first being the right to enter a plea of not guilty and place the burden of proving your guilt beyond a reasonable doubt on the State of Alabama. You understand that?
“[The appellant]: Yes, I do.
“The Court: You have a right to a trial by jury, a right to compel witnesses to appear and testify on your behalf and to *867 cross-examine the State’s witnesses. You understand that?
“[The appellant]: Yes, sir, I do.
“The Court: You have other rights that are set out in this document [the Ireland form]. Has Mr Palughi gone over the document with you in detail?
“[The appellant]: Yes, he has.
“The Court: And have you read it yourself?
“[The appellant]: Yes, I have.
“The Court: Do you understand what’s contained in the document?
“[The appellant]: Yes, sir.
“The Court: Is there anything that you do not understand?
“[The appellant]: No.
“The Court: Anything you want me to explain to you?
“[The appellant]: No.
“The Court: You understand that you would be waiving all of these rights if you persist in entering pleas of guilty? “[The appellant]: Yes, I do.
“The Court: Has anyone threatened you or coerced you into entering pleas of guilty?
“[The appellant]: No, they haven’t, Your Honor.
“The Court: Has anyone promised you anything if you entered pleas of guilty?
“[The appellant]: No, sir.
“The Court: You understand that these are blind pleas where the court can sentence you to the maximum in each count and also run those sentences consecutive, in other words, one after the other?
“[The appellant]: Yes, I do, Your Honor. “The Court: Are you entering pleas of guilty to these three offenses charging you with robbery in the first degree because you are guilty of those offenses?
“[The appellant]: Yes, Your Honor.
“The Court: What would the State expect the evidence to show?
“[Prosecuting attorney]: The State would prove on January 21, 2000, at approximately 12:05 at Shirley’s Lounge in Mobile County, the Defendant and a Charles Fountain entered Shirley’s Lounge. Defendant had a handgun, and they robbed the store, the cash register, held a gun on the witnesses and the people in the bar and stole the wallets from the victims.
“After that, they proceeded to go to the Tides Inn, and at approximately 12:40, entered the Tides Inn, the Defendant and Charles Fountain again. They again held a gun on the cashier and stole — and took two purses with them.
“After that, they left and went to Bamboo Club also in Mobile County. This was at approximately 1:35 where they again pulled a gun. The defendant was carrying a gun and put the gun up to the cashier, took the money out of the cashier and took wallets from patrons at the bar.
“The Court: Mr. Palughi, is that what you would expect the State’s evidence to show?
“Mr. Palughi: It is, Judge.”
(Supp. R. 3-7.)
The court shall allow a plea of guilty to be withdrawn when necessary to correct a manifest injustice. Alford v. State, 651 So.2d 1109 (Ala.Crim.App.1994). Whether a defendant should be allowed to withdraw a guilty plea is a matter within the discretion of the trial court, and that court’s decision will not be disturbed on appeal absent a showing of abuse of that discretion. Ex parte Blackmon, 734 So.2d 995 (Ala.1999); Robinson v. State, 730 So.2d 252 (Ala.Crim.App.1998); Boykin v. State, 361 So.2d 1158 (Ala.Crim.App.1978).
*868 In this case, the plea colloquy and the Ireland form show that the trial court met the requirements of the law, and particularly the requirements of Ala. R.Crim.P. 14.4, in conducting the guilty-plea proceedings, and in accepting the appellant’s pleas. These proceedings, particularly in view of the appellant’s age and education, his clear, concise, and straightforward answers to the trial court’s questions, and his trial counsel’s statement to the trial court at the beginning of the hearing on the motion to withdraw the pleas that it was his opinion that the appellant had been fully informed of his rights and had waived them voluntarily, strongly support the conclusion that the appellant entered the pleas voluntarily, intelligently, and with an understanding of what he was doing and of the consequences.
We believe it to be significant that the appellant did not waive his attorney-client privilege and call his trial counsel as a witness to support his claims that his counsel had lied to him and had coerced him into pleading guilty. Trial counsel was present at the hearing and available to testify. The State attempted to call the appellant’s trial counsel to testify; however, the trial court did not allow him to testify after the appellant had refused to waive his attorney-client privilege. See Ex parte Blackmon, 734 So.2d at 997. See also Colon v. State, 586 So.2d 1305 (Fla.Dist.Ct.App.1991).
The appellant now contends that he is not guilty of the crimes he was charged with; however, when he was asked by the trial court when he pleaded guilty if he was pleading guilty because he was guilty, he responded, “Yes, Your Honor.” He acknowledged that he understood the charges and that his trial counsel had explained to him what the State had to prove in each case. When the prosecuting attorney related what the State expected to prove in each case to establish a factual basis for the pleas, trial counsel agreed that that was what he expected the State’s evidence would show. We note that just before the trial court sentenced the appellant, it asked him if he had anything to say before sentence was imposed, and the appellant apologized for his actions. He stated: “I’d just like to say I feel sorry for the people who were victimized in this situation and that I’m sorry to my family if I caused them any embarrassment, any pain. I apologize to my son and just like to apologize.” It appears to us that these are hardly the expressions of a person who has been falsely accused.
In support of his motion, the appellant contends that his trial counsel lied to him when counsel told him that his father had recommended that he plead guilty. Of course, if the appellant had called his counsel as a witness, whether trial counsel had said this could have been quickly determined. He did not call his father to testify at his motion hearing, nor did he submit an affidavit from him. His uncle’s testimony in this regard is hearsay.
The appellant also contends that he requested his trial counsel to contact De-drick Morrissette and Patricia Miller, who he apparently claims would be alibi witnesses, and that his counsel failed to do so. This contention is weakened by the appellant’s own testimony at the motion hearing. He testified that he knew his trial counsel had tried to contact Morrissette but could not find him. He further testified that his counsel told him that he had tried to locate both Morrissette and Miller. No showing has been made as to what these witnesses’ testimony would have been had they been called. They were not called to testify at the motion hearing nor were affidavits from them presented.
Before accepting the appellant’s guilty pleas, the trial court stated: “The Court *869 finds the plea in each case is entered freely, understandingly, knowingly, and voluntarily. The Court accepts the plea in each case and in each case adjudges the Defendant to be guilty of the offense of robbery in the first degree.” The record of the guilty plea proceedings fully supports the findings of the trial court.
The evidence before the trial court in its consideration of the appellant’s motion to withdraw his guilty pleas was conflicting. However, the trial court had before it substantial evidence that would support an order denying the appellant’s motion to withdraw his guilty pleas. We cannot say that this determination was manifestly erroneous. In fact, the evidence supporting a denial of the appellant’s motion is strong and convincing.
Accordingly, we hold that the trial court did not abuse its discretion in denying the appellant’s motion to withdraw his guilty pleas.
We instructed the parties to brief the question of the legality of that portion of the trial court’s judgment pertaining to restitution. The parties have responded, and the State suggests that we have raised that issue prematurely and that it is not before us at this time. We agree; however, we point out again, as we did in our order of February 28, 2001, that any imposition of restitution must be by the trial court after a hearing, as mandated by § 15-18-67, Ala.Code 1975. See also Jolly v. State, 689 So.2d 986 (Ala.Crim.App.1996); Williams v. State, 624 So.2d 659 (Ala.Crim.App.1992). Also, a defendant is entitled to a hearing at which evidence is introduced to determine a precise amount of restitution. Alford v. State, 651 So.2d 1109 (Ala.Crim.App.1994). And finally, the trial court, not the probation officer, determines the time and method of payment. § 15-18-70.
Based on the above, we hereby affirm the judgment of the trial court.
The foregoing opinion was prepared by Retired Appellate Judge John Patterson while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e).
AFFIRMED.
McMILLAN, P.J., and COBB, BASCHAB, SHAW, and WISE, JJ., concur.

. The record does not indicate the disposition of the charge against the appellant in CC-2000-1102. The charges in the cases numbered CC-2000-1106 through -1109 were noll-prossed.

. Ireland v. State, 47 Ala.App. 65, 250 So.2d 602 (1971).

. The absence of the testimony of defense counsel to rebut the appellant’s testimony cannot be excused by any assertion of attorney-client privilege. See Vest v. State, 420 So.2d 803 (Ala.Crim.App.1981) (a defendant's claim and testimony that his guilty pleas were coerced by threats of defense counsel waive any attorney-client privilege).