WISE, Judge.
The appellant, Kenneth Kevin Henderson, was convicted of murder made capital by the use of a deadly weapon fired from outside a dwelling while the victim was in a dwelling, see § 13A-5-40(a)(16), Ala.Code 1975; murder made capital by the use of a deadly weapon fired from inside a vehicle, see § 13A-5-40(a)(18), Ala.Code 1975; attempted murder, see §§ 13A-4-2 and 13A-6-2, AIa.Code 1975; and the unlawful discharge of a firearm into an occupied dwelling, see § 13A-11-61, Ala.Code 1975. Henderson was sentenced to life imprisonment without parole for each capital-murder conviction, to life imprisonment for the attempted-murder conviction, and to 20 years’ imprisonment for the unlawful-discharge-of-a-firearm-into-an-oecupied-dwelling conviction; the sentences were to run concurrently. On July 20, 2006, Henderson filed a motion for a new trial. The trial court summarily denied the motion on July 24, 2006.
In his motion for a new trial, Henderson raises numerous allegations of error, including:
1. That the trial court erroneously prevented the defense from introducing evidence that Jerry Phelps, the surviving victim who testified at trial for the State, was a registered sex offender who was in violation of the Community Notification Act § 15-20-20, Ala.Code 1975, as evidence of Phelps’s character, evidence that the police did a poor job of investigating the case, and/or evidence of Phelps’s bias.
2. That the State’s forensic expert, Dr. Emily Ward, provided improper and incorrect testimony that conflicted with established medical findings and with the opinions she had provided for the State in other cases.
3. That juror misconduct occurred when a prospective juror failed to indicate on the juror questionnaire that his cousin had been convicted of capital murder; Henderson further averred that defense counsel had since learned that the juror commented to other jurors that because his cousin had been convicted of capital murder and sentenced to death for just being present at a murder scene, he was going to vote to convict Henderson. Henderson attached an affidavit from trial counsel wherein counsel stated that he would have struck that prospective juror from the jury had he known of the juror’s family-member’s conviction.
4. That Dr. Michael D’Errico should have been allowed to testify for the defense about the fallibility of eyewitness testimony and the undue weight afforded on such testimony by the authorities, prosecutors, and jurors.
5. That testimony by Joe Saloom, the State’s forensic expert witness, that he discovered copper particles on a lead *950 fragment recovered from the deceased victim’s body, conflicted with his written report and handwritten notes and was improper.
6. That the prosecutor committed misconduct because the prosecutor and authorities knew of Phelps’s alleged poor reputation for truthfulness but failed to corroborate his claims or investigate other leads that supported the defense’s theory that Phelps himself may have killed Miller several hours earlier and then staged the scene to frame Henderson. That the prosecution was aware, or should have been aware, of the inconsistencies and falsities in Ward’s and Saloom’s testimony but elicited said testimony regardless. That authorities and prosecutors attempted to coerce a witness to testify that the shotgun shell he found was red rather than yellow. That the prosecution, during closing arguments, mischaracterized or misquoted a number of statements and/or testimony by witnesses and by Henderson, made a number of improper comments regarding matters that were not pertinent to the facts of the case, improperly vouched for witnesses for the State, and improperly belittled defense witnesses. That the prosecution improperly directed several witnesses for the State to refrain from testifying about things they claim to have seen at the scene before and after the shooting.
7. That the verdict is contrary to law.
8. That the verdict is contrary to the weight of the evidence.
In support of his motion for a new trial, Henderson attached affidavits from a number of individuals and both of Henderson’s trial attorneys, excerpts from the record, medical reports concerning the victim, and assorted medical opinions, findings, and journals. In total, Henderson’s motion for a new trial and attachments thereto encompassed approximately 177 pages. The trial court did not conduct an evidentiary hearing on Henderson’s claims, nor did the trial court indicate any deficiencies in Henderson’s allegations that would have warranted summary denial of the new-trial motion or issue written findings of fact as to the merits, or lack thereof, of Henderson’s claims. Rather, the circuit court merely stamped “denied” on the first page of Henderson’s motion for a new trial.
“ ‘ “A defendant is not entitled to a hearing on a motion for new trial without a special basis therefor.” ’ Clark v. State, 621 So.2d 309, 327 (Ala.Crim.App.1992), quoting Smelcher v. State, 520 So.2d 229, 232 (Ala.Crim.App.1987). See also Arrington v. State, 757 So.2d 484 (Ala.Crim.App.1999). ‘[B]are allegations that the trial court had erred’ are not sufficient to warrant an evidentiary hearing on a motion for a new trial. Meeks v. State, 697 So.2d 60, 61 (Ala.Crim.App.1996).”
Washington v. State, 922 So.2d 145, 176-77 (Ala.Crim.App.2005).
Here, Henderson did not assert bare allegations; rather, he made specific assertions in his motion for a new trial and supported those allegations with affidavits and other documentary evidence. For example, with regard fir his allegation that he was denied a fair jury when a prospective juror failed to respond to the jury questionnaire that his cousin had been convicted of capital murder, Henderson attached an affidavit from trial counsel in which counsel indicated that he would have exercised a peremptory strike to remove the prospective juror, and that when defense counsel interviewed jurors after the trial he learned that the juror in question “told other jurors that he had a cousin who was convicted of capital murder and sentenced to death just for being present at a murder scene and that because of that he was *951 going to convict Kenneth Kevin Henderson in this case.” (C. 3018.) Thus, he is entitled to an evidentiary hearing on his motion for a new trial. The circuit court, having presided over the trial and associated proceedings, is in the best position to make findings of fact regarding these claims. Therefore, we remand this case for the circuit court to conduct an evidentiary hearing on Henderson’s motion for a new trial. We pretermit discussion of Henderson’s claims pending the circuit court’s return to our remand.
On remand, the circuit court should require the State to respond to the motion and should conduct a hearing on the motion. If the circuit court determines that Henderson is entitled to relief on his claims, then the court may grant such relief as it deems appropriate.
The circuit court shall take all necessary action to see that the circuit clerk makes due return to this Court at the earliest possible time and within 90 days of the release of this opinion. The return to remand shall include the State’s response, a transcript of the proceedings on remand, and the circuit court’s specific written findings of fact.
REMANDED WITH DIRECTIONS. 
BASCHAB, P.J., and McMILLAN and WELCH, JJ., concur. SHAW, J., concurs in the result.