Rel: June 27, 2025

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# Alabama Court of Criminal Appeals

## OCTOBER TERM, 2024-2025

_____

## CR-2023-0170

_____

## Geraldo Jarzavian Jackson

## v.

## State of Alabama

## Appeal from Montgomery Circuit Court
## (CC-18-1152)

On Return to Remand[1]

COLE, Judge.

---

[1]On July 10, 2024, this Court issued an order remanding this matter, in accordance with Rule 10(g), Ala. R. App. P., because the record on appeal did not include a transcript of Geraldo Jarzavian Jackson's sentencing hearing. The record, however, has not been supplemented because the court reporter who transcribed that hearing was deceased and the records were not located.

Geraldo Jarzavian Jackson appeals his convictions for first-degree rape, a violation of § 13A-6-61(a)(1), Ala. Code 1975, first-degree sodomy, a violation of § 13A-6-63(a)(1), Ala. Code 1975, and first-degree kidnapping, a violation of § 13A-6-43, Ala. Code 1975, and his resulting consecutive sentences of life imprisonment.

<u>Facts and Procedural History</u>

On May 23, 2017, C.A.,[2] the victim of all three offenses, worked all day at a McDonald's restaurant and came home to the extended-stay motel she was living in with her family. Her friend, Richard Griffin, called and asked her to take a ride with him. Griffin arrived around 11:00 p.m. in a black Lincoln automobile. A woman C.A. knew, Alexandria Hancock, who was Griffin's girlfriend, was in the front seat, and there was a man C.A. did not know, who would later be identified as Robert Wiley, in the back seat with C.A. When they left the motel parking lot, they turned toward an area where, at the time, there were no other buildings. Wiley started flirting with C.A. and "rubbing up on her." (R. 109.) C.A. kept moving away from him and was clinging to the door.

---

[2]Due to the nature of the offenses, initials are used to protect the victim's anonymity. <u>See</u> Rule 52, Ala. R. App. P.

2

Approximately a quarter mile from the motel, the car stopped, C.A. felt the door open, and she began to fall backward out of the car. There was suddenly another man present that would later be identified as Jackson. C.A. was pushed back into the back seat with Wiley and Jackson. C.A. then saw that all three men had guns and noted that Griffin's gun was a revolver and that Jackson's gun was all black. At trial, C.A. identified Jackson as one of the men from that night.

At first, Griffin wanted C.A. to contact a friend of hers, but the phone call did not "go through," and Griffin kept asking where C.A.'s friend was. C.A. told him she did not know. Wiley became angry and began yelling at C.A. and accusing her of lying. C.A.'s cellular telephone was taken from her and given to Griffin. Griffin handed the cellular telephone to Hancock to throw out of the window. They began driving on the interstate, and Griffin gave the men explicit instructions to rape C.A. Wiley also ordered C.A. to perform oral sex on him. Wiley told C.A. that he had a gun pressed up against her side. Wiley, Griffin, and Jackson were all wearing blue latex medical gloves. Jackson could not get C.A.'s shirt off, but he and Wiley were able to pull her pants and underwear down around her ankles, and they also "duct taped" her feet. C.A.

described her position at this point as being "restrained to the point where they could do what they wanted to orally and sexually to [her], [and] that's what they began to do." (R. 126-27.) Wiley was apparently first, but at some point, Jackson announced that it was his turn. C.A. tried to slide around in the seat and put her hand out the open window, hoping that she could gain someone's attention and flag down help. When her assailants noticed, they pulled C.A. further into the car, and Wiley hit her with a gun twice. Wiley and Jackson took turns penetrating C.A. orally, vaginally, and anally. When each was done, they would flip her over so the other could take his turn. C.A.'s feet were still taped together, and they also taped her hands together in front of her.

As she was being assaulted, C.A. kept asking Griffin and Hancock why this was happening and why Griffin would let this happen to her. Hancock told her to be quiet and that she "ought to be glad I'm not putting this on Facebook."[3]

---

[3]At trial, Hancock testified that she did not say anything or try to get help because she was "fearful." Hancock said that she was afraid because she had just seen C.A. "attacked over something that had nothing to do with most of the people involved." (R. 193.) Hancock testified that C.A. and Griffin had "a business deal going on" and that

Eventually, the car stopped. It was completely dark outside, and they appeared to be in the "middle of nowhere." (R. 117.) Griffin said that C.A. was talking too much, and Jackson put tape around her entire face. C.A. was ordered to get out of the car. Griffin told her to run, so she began running, and the assailants gave chase. Hancock testified that C.A. ran until she got to the side of a building and was cornered. C.A. then stopped and stepped down into a hole. C.A. heard a gunshot, and she stayed lying still like she was dead. C.A. then heard them fire three or four more gunshots as they ran back to the car in a celebratory manner. When she could no longer see the car's taillights, C.A. took off running in the opposite direction she had seen the car drive off in. C.A. then walked an unknown distance to a Citgo gas station. When she got to the gas station, it was early in the morning, and she told people there that she had been kidnapped and assaulted. C.A. made a 911 call, which according to 911 records, occurred at 2:24 a.m. on May 24, 2017. C.A.

---

Griffin was upset about money. (R. 193.) However, Hancock eventually admitted that she told law-enforcement officers that the incident related to a bill that a friend of C.A.'s was supposed to "get fixed" for Hancock's mother, that C.A. was given money to "fix" the bill, but that the bill was never "fixed."

5

went to the police station, the hospital, and a rape-crisis center where she had a rape kit done. C.A. testified that she had bruises on her body, that she was "split" anally and vaginally, that she had lacerations on her feet from walking barefoot to the gas station, that she had a mild concussion, and that she was still suffering emotionally from the assault at the time of trial.

On May 24, 2017, employees of One Place Family Justice Center performed a rape kit on C.A. She was sobbing, tearful, and trembling intensely. She reported having been penetrated vaginally and anally. Small gritty dirt and pebbles were found around C.A.'s anal verge. There were tape marks on her left wrist. There were also dried secretions on her face, neck, and legs. Nurse Crystal Jamith testified that what she observed during C.A.'s examination was consistent with C.A.'s report.

C.A. recalled talking to Detective Jeremy Jones of the Montgomery Police Department Special Victims Unit at some point that morning. She admitted that the statement she first gave him was not the same as her testimony at trial. C.A. initially told Det. Jones that it was her brother who had called and asked her to ride with him and that he had some guys with him who did these things to her. C.A. explained that she lied

initially because she was afraid what her assailants would do to her and her family.

Det. Jones recalled that during his first interview with C.A. she was scared, trembling, and appeared dirty. He could still see the sticky residue from the tape on her arms. In C.A.'s first statement to Det. Jones, she accused her brother of being the one who picked her up and instigated the kidnapping. Her statement included the details about being hit with a gun, her hands and feet being taped, everyone having guns and wearing latex gloves, and being orally, anally, and vaginally penetrated in the car. Det. Jones initially tried to make contact with C.A.'s brother, and, after being unable to locate him, he returned to C.A. for further questioning. That subsequent interview occurred approximately one to two days after the assault. C.A. remained extremely emotional and displayed difficulty in talking to him. Det. Jones described her behavior as that of a "typical sexual assault victim." (R. 273-74.)

C.A. was then honest and told Det. Jones that everything she had described was true except for naming her brother as leading the assault. Det. Jones testified that she then disclosed that she knew Griffin and Hancock and that she had ridden with Griffin to purchase marijuana in

7

the past. After some investigation, Det. Jones was able to present C.A. with a photo lineup, and she positively identified Hancock and Griffin. A "BOLO" was placed for both Hancock and Griffin, and, after they were arrested, Hancock consented to a search of her residence and her cellular telephone. Blue latex gloves, as described by C.A., were found during the search of Hancock's residence. Outside of Hancock's residence, law-enforcement officers found a black Lincoln automobile. A search warrant was secured for the Lincoln. Gloves similar to the ones described by C.A. were found in the car. A cap mask, a knife, a .38 revolver-style handgun, and duct tape were also found in the vehicle.

After Griffin was detained, Det. Jones then sought to identify the remaining two assailants. C.A. did not know their names, but a separate source identified the other two assailants as Wiley and Jackson. Jackson was subsequently apprehended by the United States Marshals in Florida. C.A. was able to quickly identify both Wiley and Jackson in a photo lineup. Det. Jones was subsequently able to obtain a search warrant for a DNA swab from Jackson. DNA swabs and C.A.'s rape kit were submitted to the Alabama Department of Forensic Sciences ("ADFS"). Employees of the ADFS examined C.A.'s rape kit, including

8

swabs taken from her orally, rectally, and vaginally, as well as her underwear and clothes. They found DNA matches for C.A., Wiley, and Jackson. A major component of the DNA taken from C.A.'s rape kit included Jackson's DNA.

Det. Jones testified that, at the conclusion of his investigation, Wiley, Jackson, and Griffin were all charged with offenses related to the sexual assault and abduction of C.A. Hancock was later charged relating to those events.

On March 8, 2022, this matter went to trial. Before proceedings began, the State moved in limine for the trial court to prohibit any mention of C.A.'s prior conviction for possession of a forged instrument. The trial court found that her conviction, which occurred more than 10 years before trial, was too remote to be used to challenge C.A.'s credibility as a witness. After the State rested, Jackson moved for a judgment of acquittal, arguing that the State had failed to meet its burden of proof on all four charges. That motion was denied. Jackson rested and renewed his motion for a judgment of acquittal, which was again denied. On March 10, 2022, the jury found Jackson guilty of first-degree rape, first-degree sodomy, and first-degree kidnapping, but not guilty of first-degree

robbery. On April 28, 2022, Jackson was sentenced to life imprisonment for each conviction, and those sentences were ordered to run consecutively. The sentencing order noted that Jackson was present with his attorney and that Jackson was given an opportunity to allocute before his sentences were pronounced.

## Discussion

Jackson raises the following five issues on appeal: (1) whether the trial court erred by excluding evidence that C.A. had a prior conviction for possession of a forged instrument, (2) whether Jackson's sentences were excessive and in violation of the Eighth Amendment to the United States Constitution, (3) whether the trial court erred in ordering restitution over Jackson's objection, (4) whether Jackson is entitled to a new trial because of juror misconduct, and (5) whether the verdicts are "palpably wrong" and against the weight of the evidence. We affirm Jackson's convictions and sentences, but we reverse and remand the case for a new restitution hearing.

## I.

Jackson argues that his convictions are due to be reversed based upon the trial court's decision to preclude Jackson from cross-examining

10

the victim, C.A., about her prior conviction for possession of a forged instrument. Jackson correctly asserts that one of our evidentiary rules provides, in pertinent part:

> "For the purpose of attacking the credibility of a witness,
>
>> "(1)(A) evidence that a witness other than an accused has been convicted of a crime shall be admitted, subject to Rule 403, [Ala. R. Evid.,] if the crime was punishable by death or imprisonment in excess of one year under law under which the witness was convicted, and
>>
>> "…
>>
>> "(2) evidence that any witness has been convicted of a crime shall be admitted if it involved dishonesty or false statement, regardless of the punishment."

Rule 609(a), Ala. R. Evid. Yet, the admissibility of a witness's prior conviction, for impeachment purposes, is subject to the limitation that

> "[e]vidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or the release of the witness from the confinement imposed for that conviction, whichever is the later date, unless the court determines, in the interests of justice, that the probative value of the conviction supported by the specific facts and circumstances substantially outweighs its prejudicial effect."

Rule 609(b). Furthermore,

11

> "'"[t]he admission or exclusion of evidence is a matter within the sound discretion of the trial court." Taylor v. State, 808 So. 2d 1148, 1191 (Ala. Crim. App. 2000), aff'd, 808 So. 2d 1215 (Ala. 2001). "The question of admissibility of evidence is generally left to the discretion of the trial court, and the trial court's determination on that question will not be reversed except upon a clear showing of abuse of discretion." Ex parte Loggins, 771 So. 2d 1093, 1103 (Ala. 2000). …'

> "Windsor v. State, 110 So. 3d 876, 880 (Ala. Crim. App. 2012)."

White v. State, 179 So. 3d 170, 184 (Ala. Crim. App. 2013).

The question regarding the admissibility of C.A.'s prior felony conviction was brought to the trial court's attention in the State's motion in limine seeking to preclude Jackson from asking C.A. about the conviction in the jury's presence. After hearing from the parties at a pretrial hearing, the trial court granted the State's motion and informed defense counsel that he was "not to ask [the witness] questions about the prior conviction." (R. 102.) When Jackson sought further explanation from the State regarding its motion, the trial court replied: "That's not necessary. I'm ruling against you." (Id.) Although "[t]he general rule is that an adverse ruling on a motion in limine does not preserve the issue for appellate review unless an objection is made at the time the evidence

12

is introduced," <u>Moody v. State</u>, 888 So. 2d 532, 582 (Ala. Crim. App. 2003), an adverse ruling on such a motion can be sufficient to preserve an issue for appellate review if "'"the trial court's ruling on the motion in limine is absolute or unconditional."'" <u>Webster v. State</u>, [Ms. CR-2023-0721, Mar. 28, 2025] ___ So. 3d ___, (Ala. Crim. App. 2025) (quoting <u>Lucas v. State</u>, 204 So. 3d 929, 941-42 (Ala. Crim. App. 2016), quoting in turn <u>Perry v. Brakefield</u>, 534 So. 2d 602, 606 (Ala. 1988)). Accordingly, Jackson's objection was preserved. However, although the trial court's ruling was absolute and sufficient to preserve this issue for appellate review, the trial court did not err in prohibiting Jackson from asking about C.A.'s prior conviction at trial.

Jackson concedes on appeal that C.A.'s prior conviction for possession of a forged instrument occurred in 2008; therefore, "fourteen years had passed since C.A.'s conviction by the time Jackson's case was tried." (Jackson's brief, p. 32.)

> "'If the conviction is more than ten years old then a presumption arises that it is too remote and should not be usable for impeachment. Some refer to this presumption as a rebuttable one. It casts upon the offering party the burden of convincing the court that the probative value of the conviction substantially outweighs its prejudicial impact. … This means

13

that convictions more than … ten years old will rarely be admitted.'"

Moore v. State, 878 So. 2d 328, 338 (Ala. Crim. App. 2003) (quoting 1 Charles W. Gamble, McElroy's Alabama Evidence § 145.01(19) (5th ed. 1996)). Rule 609(b) expressly states that, to overcome this presumption, the proponent of the evidence, in this case Jackson, must give "specific facts and circumstances" to meet his burden to establish that the "probative value" of using the prior conviction for impeachment purposes "substantially outweighs" the prejudicial effect. Jackson's failure to inform the trial court of anything other than the type of C.A.'s previous offense and the date of her conviction did not meet his burden of proof. The admissibility of evidence is "'left to the discretion of the trial court, and the trial court's determination on that question will not be reversed except upon a clear showing of abuse of discretion.' Ex parte Loggins, 771 So. 2d 1093, 1103 (Ala. 2000)." Arnold v. State, 278 So. 3d 1, 7 (Ala. Crim. App. 2017). We hold that the trial court did not abuse its discretion in granting the State's motion in limine and precluding Jackson from questioning C.A. regarding her conviction that occurred 14 years before

14

she was called to testify in this case. Thus, Jackson is not entitled to relief based on this argument.

## II.

Jackson next argues that his three consecutive sentences of life imprisonment, which include eligibility for parole, "are excessive and grossly disproportionate to the crimes charged, constituting an Eighth Amendment violation." (Jackson's brief, p.39.) The Eighth Amendment to the United States Constitution provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." Jackson was convicted of three Class A felonies; therefore, his sentences of life in prison are within the statutory range for a Class A felony of "life or not more than 99 years or less than 10 years" as outlined in § 13A-5- 6(a)(1), Ala. Code 1975.

> "'At the outset, we acknowledge that determinations regarding the punishments to be imposed for different crimes are purely legislative,' and this Court therefore 'generally will not review sentences imposed within statutorily prescribed limits.' Wilson [v. State], 830 So. 2d [765,] 771 [(Ala. Crim. App. 2001)]. … Nevertheless, '"[t]he Eighth Amendment … contains a 'narrow proportionality principle' that 'applies to noncapital sentences.'"' Lane v. State, 66 So. 3d 830, 831 (Ala. Crim. App. 2010) (quoting Ewing v. California, 538 U.S. 11, 17, 123 S. Ct. 1179, 155 L. Ed. 2d 108 (2003), quoting in

15

turn <u>Harmelin v. Michigan</u>, 501 U.S. 957, 996-97, 111 S. Ct. 2680,115 L. Ed. 2d 836 (1991)).That narrow proportionality principle authorizes an appellate court to review a sentence that is within the statutorily prescribed limits to ensure that the sentence is constitutional. <u>See</u> <u>Adams v. State</u>, 815 So. 2d 583, 585 (Ala. Crim. App. 2001) ('"'[A]ppellate courts may review a sentence, which, although within the prescribed limitations, is so disproportionate to the offense charged that it constitutes a violation of a defendant's Eighth Amendment rights.'"' (quoting <u>Brown v. State</u>, 611 So. 2d 1194, 1198 n. 6 (Ala. Crim. App. 1992), quoting in turn <u>Ex parte Maddox</u>, 502 So. 2d 786 (Ala. 1986)))."

<u>Crayton v. State</u>, 392 So. 3d 104, 118 (Ala. Crim. App. 2023).

In determining whether Jackson's sentences are unconstitutionally "disproportionate" to the offenses he committed,

"'we must consider the gravity of the offense[s] and the harshness of the punishment. <u>Solem [v. Helm,]</u> 463 U.S. [277] at 290-91, 103 S. Ct. 3001 [(1983)]. The United States Supreme Court noted in <u>Solem</u> that no single factor determines when a sentence is grossly disproportionate, and it offered a nonexhaustive list of factors to be considered when a court is assessing the severity of a crime. These factors include consideration of the circumstances of the crime, the harm caused to the victim or to society, the culpability of the offender, and the offender's motive in committing the crime. <u>Id.</u> at 290-94, 103 S. Ct. 3001.'"

<u>Lane v. State</u>, 66 So. 3d 830, 831 (Ala. Crim. App. 2010) (quoting <u>Wilson v. State</u>, 830 So. 2d 765, 778 (Ala. Crim. App. 2001)).

Jackson's crimes were calculated, heinous, and cruel. Griffin, Hancock, and Wiley picked up C.A., and Jackson entered the car soon thereafter. Griffin instructed Wiley and Jackson to rape C.A. At gun point, Wiley forced C.A. to perform oral sex on him. Jackson and Wiley, who were wearing latex medical gloves, forced down C.A.'s pants and underwear, "duct taped" her feet, and then took turns forcefully penetrating her orally, vaginally, and anally. Then, after also taping her hands together, they stopped the car in the dark "in the middle of nowhere." To stop her from talking, Jackson put tape around her entire face, and Griffin told C.A. to run. They pursued C.A. until she stepped in a hole and heard shots being fired. C.A. then lay on the ground as if she was dead, and her assailants continued to fire shots in her direction as they ran back to the car in a celebratory manner. They left her for dead, but C.A. survived the attack and was able to get to a gas station, call emergency 911, and obtain medical assistance. C.A. was "split" anally and vaginally, had a concussion, and suffered emotionally for years. It appears that the only motive for the crimes was that Hancock was angry about some money paid to C.A. to "fix a bill" for Hancock's mother.

Based upon the facts presented at trial, it is clear that all factors that should be considered in determining the severity of the crimes weigh heavily against Jackson. Furthermore, although the imposition of consecutive life sentences was severe, Jackson is eligible for parole under the sentences imposed. It is clear that "'[t]he imposition of consecutive life sentences [involving a rape and first-degree sexual offense], standing alone, does not constitute cruel or unusual punishment.'" State v. Freeman, 93 N. C. App. 380, 392, 378 S.E.2d 545, 553 (1989) (quoting State v. Ysaguire, 309 N.C. 780, 786, 309 S.E.2d 436, 441 (1983)). Weighing the relevant factors, we hold that Jackson's sentences are not unconstitutional.

Furthermore, Jackson's attempt to compare this case to Wilson v. State, 830 So. 2d 765 (Ala. Crim. App. 2001), is to no avail. In Wilson, this Court found that Wilson's mandatory life-without-the-possibility-of-parole sentence for trafficking in morphine, which was Wilson's first offense, was unconstitutional. Clearly, the facts in Jackson's case are far more egregious than those considered in Wilson. The acts committed by Jackson warrant the severe sentences imposed by the trial court, and

18

there was no error in the trial court's decision to impose three consecutive sentences of life imprisonment.

## III.

Jackson next argues that the trial court erred in ordering restitution, over his objection, without requiring proof in support of the State's request for restitution. The State has also asked that this case be remanded for the trial court to make specific findings on the issue of restitution so that the order, and Jackson's argument, may be properly reviewed on appeal.

After Jackson was convicted, the State filed a motion requesting $2,085 in restitution "for the expenses that [C.A.] incurred as a result of the crime that was inflicted upon her by the defendant." (C. 317.) Jackson filed a written objection to the motion and requested a hearing. At the restitution hearing, which C.A. did not attend, the State requested $2,134, based upon C.A.'s court-related travel expenses and the work wages she lost because of the case. Jackson objected and argued that any order of restitution based upon a "sheet of paper" that was unsupported by any evidence was inappropriate. The trial court orally granted the State's request for $2,134 in restitution. The final order of restitution

stated as follows: "ON THE OBJECTION TO RESTITUTION REQUEST OR IN THE ALTERNATIVE SET A RESTITUTION HEARING, the Court received the work sheet prepared by the Montgomery County District Attorney's Office and heard arguments from counsel. After careful consideration, the Court awards restitution in this case in the amount of $2,085.00." (C. 407 (capitalization in original).)

Jackson accurately points out that he had a statutory right to be heard on the issue of restitution. § 15-18-67, Ala. Code 1975, provides:

> "When a defendant is convicted of a criminal activity or conduct which has resulted in pecuniary damages or loss to a victim, the court shall hold a hearing to determine the amount or type of restitution due the victim or victims of such defendant's criminal acts. Such restitution hearings shall be held as a matter of course and in addition to any other sentence which it may impose, the court shall order that the defendant make restitution or otherwise compensate such victim for any pecuniary damages. The defendant, the victim or victims, or their representatives or the administrator of any victim's estate as well as the district attorney shall have the right to be present and be heard upon the issue of restitution at any such hearings."

Furthermore, Rule 26.11(b)(5), Ala. R. Crim. P., states that the "amount of gain derived by the defendant or loss sustained by the victim as a result of defendant's commission of the offense … shall be determined by the

20

court from <u>evidence</u> presented at the sentence hearing if not stipulated by the parties." (Emphasis added.) This Court has consistently held:

> "[A]ny imposition of restitution must be by the trial court after a hearing, as mandated by § 15-18-67, Ala. Code 1975. <u>See also</u> <u>Jolly v. State</u>, 689 So. 2d 986 (Ala. Crim. App. 1996); <u>Williams v. State</u>, 624 So. 2d 659 (Ala. Crim. App. 1992). Also, a defendant is entitled to a hearing at which evidence is introduced to determine a precise amount of restitution. <u>Alford v. State</u>, 651 So. 2d 1109 (Ala. Crim. App. 1994)."

<u>Walker v. State</u>, 827 So. 2d 863, 869 (Ala. Crim. App. 2001).

As Jackson notes in his brief on appeal, this Court has addressed similar situations on numerous occasions. In <u>Arnold v. State</u>, 278 So. 3d 1 (Ala. Crim. App. 2017), Arnold argued on appeal that the circuit court erred in ordering restitution without taking evidence at a restitution hearing. Finding that the circuit court did not hold a restitution hearing and that it had "based restitution solely on a victim information sheet submitted by Arnold as evidence to impeach [the victim]," <u>id.</u> at 12, this Court reversed the circuit court's order of restitution because Arnold was "denied the opportunity to argue the appropriate amount of restitution." <u>Id.</u> Likewise, in <u>Henry v. State</u>, 468 So. 2d 896, 901 (Ala. Crim. App. 1985), "the victim testified [at trial] that the value of the stolen property was 'just a little under $3,000,'" and at the sentencing hearing the trial

court was presented a "'Restitution Form' on which it itemized the victim's losses and valued them at $2,356." Over Henry's objection, the trial court ordered restitution as outlined in the "Restitution Form." In reversing the trial court's restitution order, this Court held that Henry "was entitled to a hearing, at which legal evidence was introduced" and that "the 'Restitution Form' as presented to the court was not legal evidence without accompanying testimony regarding the manner in which the values were determined." Id. at 901. As in Arnold and Henry, Jackson was denied his right to a hearing on the issue of restitution; therefore, the award of restitution must be reversed and the case remanded for the trial court to hold a restitution hearing.

The State agrees that a remand is necessary, but for a different reason. The State notes that, after holding a restitution hearing, "[t]he [trial] court shall thereafter enter its order upon the record stating its findings and the underlying facts and circumstances thereof." § 15-18-69, Ala. Code 1975. The State argues that, in order to allow appropriate appellate review, this Court

> "'must have, on the record, the trial court's specific findings and the specific underlying facts and circumstances thereof that led the trial court to grant restitution … facts deduced

22

> from legal evidence that support the trial court's finding that each amount awarded is for (1) damages recoverable under the Alabama Restitution to Victims of Crimes Act and (2) that were proximately caused [by the defendant's] criminal activity.'"

(State's brief, p. 33 (quoting <u>Moore v. State</u>, 706 So. 2d 265, 268-69 (Ala. Crim. App. 1996))). The State concedes that the trial court's order lacks "specific findings regarding the underlying facts and circumstances that led the trial court to grant restitution and its reasons for the amount of restitution that it directs Jackson to pay." (State's brief, p. 34.) Thus, on remand, if the trial court enters an order for restitution, that order should meet the specificity requirements outlined in § 15-18-69.

## IV.

Jackson also argues that the "circuit court erred to reversal when it allowed Jackson's motion for new trial based on alleged juror misconduct to be denied by operation of law. Alternatively, the circuit court erred to reversal when it determined, on the merits, that Jackson was not entitled to a new trial." (Jackson's brief, p. 47.) Before addressing this issue, a summary of the procedural history of the case is necessary.

23

On March 10, 2022, the jury found Jackson guilty of first-degree rape, first-degree sodomy, and first-degree kidnapping. On April 28, 2022, the trial court imposed consecutive sentences of life imprisonment for each conviction. On May 31, 2022, Jackson filed a motion for a new trial, which alleged, in part, that there had been juror misconduct because one of the jurors failed to reveal his close relationship with Jackson and Jackson's father.[4] The motion for a new trial did not include an affidavit from the juror or an affidavit from any other individuals to support the allegations included in the motion. Also on May 31, 2022,

---

[4]Rule 24.1(b), Ala. R. Crim. P., states that "[a] motion for new trial must be filed no later than thirty (30) days after sentence is pronounced." But § 1-1-4, Ala. Code 1975, governs the computation of this time limitation and states that the

"[t]ime within which any act is provided by law to be done must be computed by excluding the first day and including the last. However, if the last day is Sunday, or a legal holiday as defined by Section 1-3-8, [Ala. Code 1975,] or a day on which the office in which the act must be done shall close as permitted by any law of this state, the last day also must be excluded, and the next succeeding secular or working day shall be counted as the last day within which the act may be done."

Because the 30th day after Jackson's sentencing fell on a Saturday and the Memorial Day Holiday was on the following Monday, Jackson's motion for a new trial was timely filed on Tuesday, May 31, 2022.

24

Jackson filed a motion to reconsider his sentences. On June 6, 2022, Jackson filed his first, timely, notice of appeal. A hearing was held on June 9, 2022, at which the trial court denied Jackson's objections to the presentence-investigation report. Jackson's pending motion for a new trial was discussed at this hearing, and on the same date the trial court set the case for an "Evidentiary Hearing and Restitution Hearing on Thursday, August 11, 2022." (C. 374.)

After multiple continuances, Jackson's motion for a new trial and other pending motions were heard on February 2, 2023. Although neither party objected to any of the continuances, Jackson concedes on appeal that there had not been an "express agreement on the record" to continue the hearing to a "date certain." (Jackson's brief, p. 10.) The trial court heard witnesses on Jackson's motion for a new trial on February 2, 2023, but also heard arguments on whether the motion had been denied by operation of law. The trial court denied Jackson's motion for a new trial, without explanation, at this hearing and subsequently entered an order denying the motion, in part, because "no grounds exist that would warrant the granting of a [new trial]." (C. 407.) On February 23, 2023, the trial court entered an order stating that its previous ruling

denying Jackson's motion for a new trial was "based on Rule 24.4, Ala. R. Crim. P.," and expressly held that Jackson's "Motion for New Trial is hereby DENIED by operation of law" because the motion had "been pending for more than 60 days, and there has been no express consent of the parties in the record." (C. 436 (capitalization in original).) On March 1, 2023, Jackson filed a renewed notice of appeal.

This Court must first determine whether Jackson's motion for a new trial was denied by operation of law and, if so, the effect of any proceedings that occurred after that denial. Rule 24.4, Ala. R. Crim. P., provides that

> "[n]o motion for new trial or motion in arrest of judgment shall remain pending in the trial court for more than sixty (60) days after pronouncement of sentence, except as provided in this section. A failure by the trial court to rule on such a motion within the sixty (60) days allowed by this section shall constitute a denial of the motion as of the sixtieth day; provided, however, that with the express consent of the prosecutor and the defendant or the defendant's attorney, which consent shall appear in the record, the motion may be carried past the sixtieth day to a date certain.…"

Jackson seems to concede on appeal that because his motion for a new trial was not "continued to a date certain with the express consent of all parties, on the record, before June 26, 2022," the motion was denied by

26

operation of law. (Jackson's brief, p. 7. n.1.) We agree that the motion was denied by operation of law. Furthermore, "if a motion for new trial is filed within the 30-day period, the trial court retains jurisdiction until the motion is ruled on or the motion is deemed denied by operation of law, 60 days after sentence is pronounced. Rule 24.4, Ala. R. Crim. P." Ex parte City of Montgomery, 721 So. 2d 261, 264 n. 4 (Ala. 1998). Once the motion for a new trial was denied by operation of law, any subsequent proceeding or "order [related to the motion] was void and without legal consequence." Snell v. State, 723 So. 2d 105, 107 (Ala. Crim. App. 1998).

Although Jackson's motion for a new trial was denied by operation of law, he asserts that he is entitled to have this case remanded for a hearing on his motion. Jackson correctly asserts on appeal that when

> "'a criminal defendant's motion for a new trial is denied under the provisions of Rule 24.4, Ala. R. Crim. P., without an affirmative statement by the trial judge giving the ruling a presumption of correctness and the defendant supports his new trial motion by evidence that was not presented at trial, and that evidence, if not controverted by the State, will entitle him to a new trial, the denial by operation of law should be reversed and the case remanded for the trial court to conduct a hearing on his motion for new trial and then enter an order either granting or denying the motion.'"

27

(Jackson's brief, p. 48 (quoting <u>Edgar v. State</u>, 646 So. 2d 683, 687 (Ala. 1984)) (emphasis added)). However, Jackson did not support his motion for a new trial with any affidavits or other supporting evidence. Thus, the trial court did not err by denying Jackson an evidentiary hearing on his motion for a new trial based on unverified, unsupported bare allegations of juror misconduct.

As this Court explained in <u>Washington v. State</u>, 922 So. 2d 145, 176-77 (Ala. Crim. App. 2005):

> "'"A defendant is not entitled to a hearing on a motion for new trial without a special basis therefor."' <u>Clark v. State</u>, 621 So. 2d 309, 327 (Ala. Crim. App. 1992), quoting <u>Smelcher v. State</u>, 520 So. 2d 229, 232 (Ala. Crim. App. 1987). <u>See also Arrington v. State</u>, 757 So. 2d 484 (Ala. Crim. App. 1999). '"[B]are allegations that the trial court had erred"' are not sufficient to warrant an evidentiary hearing on a motion for a new trial. <u>Meeks v. State</u>, 697 So. 2d 60, 61 (Ala. Crim. App. 1996). Moreover, unless the grounds are sufficiently specific and supported by facts contained in the record, a motion for a new trial must be verified and supported by affidavit. <u>See, e.g.</u>, <u>Ex parte Jefferson</u>, 749 So. 2d 406 (Ala. 1999); <u>Jones v. State</u>, 727 So. 2d 866 (Ala. Crim. App. 1998); and <u>Hill v. State</u>, 675 So. 2d 484 (Ala. Crim. App. 1995). '"Assertions of counsel in an unverified motion for new trial are bare allegations and cannot be considered as evidence or proof of the facts alleged."' <u>Smith v. State</u>, 364 So. 2d 1, 14 (Ala. Crim. App. 1978). '"'Error may not be predicated upon the overruling of a motion for new trial where there was no evidence offered in

support of the motion.'"' <u>Britain v. State</u>, 518 So. 2d 198, 203 (Ala. Crim. App. 1987), quoting <u>Tucker v. State</u>, 454 So. 2d 541, 547-48 (Ala. Crim. App. 1983), rev'd on other grounds, 454 So. 2d 552 (Ala. 1984). <u>See also</u> <u>Arnold v. State</u>, 601 So. 2d 145, 154 (Ala. Crim. App. 1992) ('There is no error in a trial court's denial of a motion for new trial where no evidence is offered in support of that motion.')."

<u>Cf.</u> <u>Henderson v. State</u>, 60 So. 3d 948, 950 (Ala. Crim. App. 2008) (remanding case for an evidentiary hearing because "Henderson did not assert bare allegations; rather, he made specific assertions in his motion for a new trial and <u>supported those allegations with affidavits and other documentary evidence</u>" (emphasis added)). As in <u>Washington</u>, "[b]ecause [Jackson's] motion for a new trial was not verified, because no affidavits were submitted in support of the motion, and because the motion contained only general and conclusory allegations, [Jackson] was not entitled to an evidentiary hearing on the motion." 922 So. 2d at 177.

Furthermore,

"'[t]here is no error in a trial court's denial of a motion for new trial where no evidence is offered in support of that motion.' <u>Arnold [v. State]</u>, 601 So. 2d [145,] 154 [(Ala. Crim. App. 1992)]. … [A]lthough the motion was denied by operation of law, since the motion for a new trial is not supported by an affidavit or any other evidence and the grounds relied on in the motion are not shown by the record, 'it is unnecessary for this court to reverse and remand this case to the trial court for a hearing on the appellant's allegations … contained in the

motion for new trial.' Similton [v. State], 672 So. 2d [1363,] 1366 [(Ala. Crim. App. 1995)]; see Hill v. State, 675 So. 2d 484 (Ala. Cr. App. 1995). The denial of the motion for a new trial is due to be upheld."

Smith v. State, 675 So. 2d 100, 101 (Ala. Crim. App. 1995).

Although the trial court did hear testimony on Jackson's motion for a new trial, at the time that testimony was given the motion had been denied by operation of law months before the hearing. The proceedings after the motion was denied by operation of law were "void" and cannot be considered by this Court in support of the motion or the appeal. Therefore, the trial court did not err in denying Jackson's motion for a new trial, albeit by operation of law, and Jackson is not due any relief based upon this argument.

## V.

Jackson's final argument is that all three of the jury's guilty verdicts are "palpably wrong or contrary to the great weight of the evidence." (Jackson's brief, p. 61.) "'The issue of the weight of the evidence is preserved by a motion for a new trial stating "that the verdict is contrary to law or the weight of the evidence."' Zumbado v. State, 615 So. 2d 1223, 1241 (Ala. Crim. App. 1993); see also Rule 24.1(c), Ala. R.

30

Crim. P." Rudolph v. State, 200 So. 3d 1186, 1189 (Ala. Crim. App. 2015).

Thus, this issue was preserved for appellate review in Jackson's motion

for a new trial, which asserted that "the verdict of the jury is contrary to

the great weight of the evidence in this case." (C. 320.)

As this Court stated in Thompson v. State, 97 So. 3d 800 (Ala. Crim.

App. 2011):

> "'Once a prima facie case has been submitted to the [fact-finder], this Court will not upset the [fact-finder's] verdict except in extreme situations in which it is clear from the record that the evidence against the accused was so lacking as to make the verdict wrong and unjust. Deutcsh v. State, 610 So. 2d 1212, 1234-35 (Ala. Crim. App. 1992). This Court will not substitute itself for the [fact-finder] in determining the weight and probative force of the evidence. Benton v. State, 536 So. 2d 162, 165 (Ala. Crim. App. 1988).'"

97 So. 3d at 810 (quoting May v. State, 710 So. 2d 1362, 1372 (Ala. Crim.

App. 1997)).

The State clearly established a prima facie case that Jackson had

raped, sodomized, and kidnapped C.A. To prove that Jackson committed

a first-degree rape, the State had to prove that Jackson "engage[d] in

sexual intercourse with [C.A.] by forcible compulsion." § 13A-6-61(a)(1),

Ala. Code 1975. The elements of first-degree sodomy are established if

evidence is presented that a person "engage[d] in sodomy with another person by forcible compulsion." § 13A-6-63(a)(1), Ala. Code 1975. "Sodomy" is defined as "[a]ny sexual act involving the genitals of one person and the mouth or anus of another person." § 13A-6-60(5), Ala. Code 1975. Finally, a person commits the crime of first-degree kidnapping if "he abducts another person with intent to … [i]nflict physical injury upon [her], or to violate or abuse [her] sexually." § 13A-6-43(a)(4), Ala. Code 1975.

C.A. testified in detail that Jackson and Wiley, at Griffin's direction, held C.A. at gunpoint and took her in a vehicle to a deserted and remote location. During that time, they bound her with duct tape and forcefully took turns penetrating her orally, vaginally, and anally. "It is well established that '"the victim's testimony alone is sufficient to establish a prima facie case of either rape or sexual abuse."' Shouldis v. State, 953 So. 2d 1275, 1285 (Ala. Crim. App. 2006) (quoting Jones v. State, 719 So. 2d 249, 255 (Ala. Crim. App. 1996))." Black v. State, 295 So. 3d 1120, 1136 (Ala. Crim. App. 2019). Jackson argues that C.A.'s testimony was "problematic" and that her testimony conflicted with several pretrial statements that she gave to authorities. Yet,

inconsistencies between testimony and pretrial statements cannot be grounds for an appellate court to overturn the verdict of a jury.

>    This Court has held that
>
>>    "'"[a]ny inconsistencies and conflicts in the evidence [are] for the jury to resolve. This court is not a finder of fact and will not second-guess juries in their conclusions as to the facts of a case. '"[V]erdicts rendered [on conflicting evidence] are conclusive upon appeal." Johnson v. State, 555 So. 2d 818, 820 (Ala. Crim. App. 1989).' Dailey v. State, 604 So. 2d 436 (Ala. Crim. App. 1992). See also Woods v. State, 592 So. 2d 631 (Ala. Crim. App.), writ quashed, 592 So. 2d 636 (Ala. 1991)."'"

Jones, 719 So. 2d at 255 (quoting Rowe v. State, 662 So. 2d 1227, 1229 (Ala. Crim. App. 1995)).

In sum, a prima facie case was made to support each verdict, and the jury was free to resolve any inconsistencies, conflicts, and credibility questions presented by the evidence. C.A.'s testimony was sufficient to support the jury's verdicts, even without the additional eyewitness testimony of Hancock and the forensic evidence that implicated Jackson in C.A.'s rape, sodomy, and kidnapping. Contrary to Jackson's arguments on appeal, "this is not one of the 'limited category of cases' or 'extreme situations in which it is clear from the record that the evidence against the accused was so lacking as to make the verdict wrong and

unjust.'" <u>Scott v. State</u>, 334 So. 3d 245, 248 (Ala. Crim. App. 2020) (quoting <u>Thompson v. State</u>, 97 So. 3d 800, 810 (Ala. Crim. App. 2011)). There was overwhelming evidence to support the jury's verdicts, and, contrary to Jackson's arguments, all three of his convictions are due to be affirmed.

## Conclusion

Based on the foregoing, we affirm Jackson's convictions and consecutive sentences of life imprisonment. However, we reverse the trial court's award of restitution and remand the case to the trial court for that court to conduct a restitution hearing in accordance with this opinion. Following the hearing, the trial court shall enter an order stating the findings of fact that the court relied upon in determining restitution. The trial court shall take all necessary action to ensure that the record on return to remand is certified and transmitted to this Court within 42 days of the date of this opinion.

AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.

Windom, P.J., and Kellum, Minor, and Anderson, JJ., concur.